

U.S. Department of Justice

United States Attorney
Eastern District of New York

MKM:TH/MKP  
F. #2017R01840

271 Cadman Plaza East
Brooklyn, New York 11201

April 20, 2018

By ECF & Hand

The Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court
Eastern District of New York
226 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Keith Raniere and Allison Mack
                 Docket No. 18-CR-204 (NGG)

Dear Judge Pollak:

      The government respectfully submits this letter to set forth the government's position with respect to bail in anticipation of the defendant Allison Mack's arraignment on the above-captioned indictment.  For the reasons set forth below, the government respectfully submits that Mack poses a risk of danger and risk of flight and should only be released pursuant to a substantial, heavily secured bond, commensurate with Mack's financial resources, signed by a number of financially responsible sureties unaffiliated with Nxivm, and subject to additional conditions of release including, among others, home detention with electronic monitoring.

## BACKGROUND

      On April 19, 2018, a grand jury sitting in this District returned an indictment charging Keith Raniere and Allison Mack with sex trafficking, sex trafficking conspiracy and conspiracy to commit forced labor.  As described in the complaint filed against Keith Raniere on February 14, 2018 (18-M-132), in which Mack (hereinafter, the "defendant") is referred to as "CC-1," the defendant is alleged to have recruited and persuaded young women into joining a secret organization called "DOS" or the "Vow."  DOS is comprised of "masters" who recruit and command groups of "slaves."  The defendant recruited prospective DOS slaves to join DOS by describing it as a women's empowerment group or sorority.  The defendant had women provide her with "collateral," which consisted of naked

photographs, assets, criminal confessions and other damaging information, to prevent the women from leaving the group or disclosing its existence to others. Once they joined, DOS recruits were required to provide additional collateral, which they did, fearing that their original collateral would be released.

As set forth in the complaint, DOS slaves understood that their participation in DOS was a lifetime commitment and that if they disclosed their participation in DOS, left DOS, or failed to complete assignments given to them by their masters, their collateral could be released. DOS masters, including the defendant, benefited financially from recruiting and maintaining DOS slaves. DOS slaves were often required to perform "acts of care" for their masters and to pay "tribute" to their masters, including by performing labor and other services for which the DOS slaves were not compensated. In addition, the defendant directed some DOS slaves (including Jane Doe 1) to have sex with Keith Raniere, whose participation in DOS was not disclosed. DOS masters, including the defendant, groomed DOS slaves for sex with Raniere by requiring DOS slaves to adhere to extremely restrictive diets and not remove their pubic hair (in accordance with Raniere's sexual preferences) and by requiring them to remain celibate and not to masturbate. DOS masters, including the defendant, who directed their slaves to have sex with Raniere, received financial benefits in the form of continued status and participation in DOS, as well as financial opportunities from Raniere.

DOS masters, including the defendant, also demanded that DOS slaves participate in "readiness" drills, which required them to respond to their masters any time of day or night, causing DOS slaves to be seriously sleep-deprived. DOS slaves were also branded in their pelvic regions with a cauterizing pen with a symbol that, unbeknownst to them, incorporated Raniere's initials.

For the reasons set forth below, the government respectfully submits that, given the serious risk of flight and danger to the community that the defendant poses, the defendant should be released only pursuant to a substantial secured bond signed by several financially responsible U.S.-based sureties who are unaffiliated with Nxivm. In addition, the Court should order home confinement with electronic monitoring.

ARGUMENT

I.      Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d

Cir. 1985). By contrast, detention based on dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g). The rules governing admissibility of evidence at trial do not apply in a detention hearing. See 18 U.S.C. § 3142(f); Fed. R. Evid. 1101(d)(3). Accordingly, the government may proceed by proffer, United States v. Ferranti, 66 F.3d 540, 541-42 (2d Cir. 1995); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). In addition, when a finding of dangerousness is related to violent conduct, it need not be shown that the defendant personally engaged in violence. United States v. Colombo, 777 F.2d 96, 98 (2d Cir. 1985).

II.     The Defendant Is a Risk of Flight and a Danger to the Community

    A.   Nature and Circumstances of the Crimes Charged

The charges the defendant faces are extremely serious. The defendant is charged with using force, fraud and coercion to recruit and maintain DOS slaves, and instructing those slaves to engage in sexual acts with Raniere, among other assignments. The defendant aggressively recruited DOS slaves and required those slaves to recruit slaves of their own. As alleged in the complaint charging her co-defendant, the defendant was focused on recruiting attractive young women who could meet Raniere's sexual preferences. The government's evidence includes admissions by the defendant to witnesses reflecting the defendant's understanding of the true purpose of DOS, including that DOS slaves would be instructed to have sex with Raniere.

The defendant's slaves were kept seriously sleep-deprived and emaciated to the point where they stopped menstruating. During the ceremonies in which her slaves were branded, the defendant placed her hands on the slaves' chests and told them to "feel the pain" and to "think of [their] master," as the slaves cried with pain. The defendant also provided naked photographs of her slaves to Raniere and was aware of Raniere's proclivity for having sex with multiple young women.

Reflecting the seriousness of the charged offenses, the sex trafficking count set forth in Count One carries a mandatory minimum sentence of 15 years' imprisonment and a

3

maximum sentence of life imprisonment. Such a heavy term of incarceration creates a substantial incentive to flee. The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); Martir, 782 F.2d at 1147 (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

B. History and Characteristics of the Defendant

The history and characteristics of the defendant also militate in favor of a substantial bail package and restrictive pre-trial conditions. Given her status within DOS and her access to DOS slaves' collateral, the defendant poses a particular threat because of her ability to direct others to carry out activities on her behalf. In light of the number of witnesses who are themselves members of DOS and have provided collateral and vows of obedience to the defendant and other DOS masters, there is a significant and unique risk of witness intimidation and tampering which must be mitigated. Cf. 18 U.S.C. § 3142(f)(2)(B) (court may also order detention if there is "a serious risk that the [defendant] will . . . attempt to obstruct justice, or . . . to threaten, injure, or intimidate, a prospective witness or juror"). The government has obtained evidence that after its investigation was reported in the press, high-ranking members of DOS undertook efforts to undermine potential witnesses, including by registering domain names such as [Witness Name]exposed.com, with the intention of publishing damaging information regarding those witnesses.

Although the defendant has in the past year rented an apartment in Brooklyn, her ties to the Eastern District of New York are limited, as her family lives in California. She has also traveled extensively within the past five years and has powerful contacts associated with Nxivm across the United States and abroad. For instance, the son of a former Mexican president is the head of a Nxivm center in Mexico. When Keith Raniere was apprehended in Mexico, the defendant had been living with him at a luxury villa which cost over $10,000 a week to rent. Other high-ranking members of Nxivm have access to vast financial resources, in the millions of dollars.

In the absence of a substantial bond with extensive conditions, the Court would not have sufficient means to ensure that the defendant would not commit additional crimes during any period of release or that she would not otherwise violate bail conditions, such as by contacting her former coconspirators or other witnesses who could testify against her.

C. Evidence of the Defendant's Guilt

Finally, the weight of the evidence against the defendant is strong. The government's evidence includes witness testimony that is corroborated by, among other evidence, electronic communications between the defendant and her co-conspirators and other documentary evidence and records. These electronic communications evidence the defendant's involvement in DOS recruitment, her participation in conducting "readiness" drills and the assignment of tasks and penances, and other efforts aimed at the continued manipulation and coercion of DOS slaves. This factor, too, strongly favors detention in the absence of a significant bail package.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendant should not be released unless and until she posts a substantial secured bond, as well as the signatures of several financially responsible sureties who are not affiliated with Nxivm. Further, any such release should be under the conditions of home confinement with electronic monitoring, among other restrictions.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/
Moira Kim Penza
Tanya Hajjar
Assistant U.S. Attorneys
718-254-7000

cc: William F. McGovern, Esq. (by email)
     Sean S. Buckley, Esq. (by email)
     Kobre & Kim LLP