```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA       *     Case No. 18-CR-204(NGG)
                               *
                               *     Brooklyn, New York
                               *     April 20, 2018
     v.                        *
                               *
ALLISON MACK,                  *
                               *
          Defendant.           *
                               *
* * * * * * * * * * * * * * * *

          TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
             BEFORE THE HONORABLE CHERYL L. POLLAK
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          MOIRA KIM PENZA, ESQ.
                             TANYA HAJJAR, ESQ.
                             Asst. United States Attorney
                             United States Attorney's Office
                             271 Cadman Plaza
                             Brooklyn, NY 11201


For the Defendant:           SEAN BUCKLEY, ESQ.
                             WILLIAM McGOVERN, ESQ.
                             Kobre & Kim, LLP
                             800 Third Avenue
                             New York, NY  10022
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

| | |
|---|---|
| 1 | (Proceedings commenced at 4:27 p.m.) |
| 2 | THE CLERK:  This is criminal cause for arraignment |
| 3 | on indictment, USA vs. Allison Mack.  The case number is 18- |
| 4 | CR-204.  Counsel, please state your name for the record, |
| 5 | starting with the government. |
| 6 | MS. PENZA:   Moire Kim Penza and Tonya Hajjar for |
| 7 | the United States.  Good afternoon, Your Honor. |
| 8 | THE COURT:  Good afternoon. |
| 9 | MR. BUCKLEY:  Yes.  Good afternoon, Your Honor. |
| 10 | Sean Buckley and William McGovern, of the law firm Kobre & |
| 11 | Kim, LLP, on behalf of Ms. Mack. |
| 12 | THE COURT:  All right.  Good afternoon. |
| 13 | Ms. Mack, I take it that you understand English. |
| 14 | THE DEFENDANT:  Yes. |
| 15 | THE COURT:  Okay.  If at any point something is |
| 16 | said that you don't understand, please let me know, okay? |
| 17 | All right. |
| 18 | Now, you have the right to remain silent.  Anything |
| 19 | you say, except what you say to your attorneys, can be used |
| 20 | against you. |
| 21 | Do you understand that? |
| 22 | THE DEFENDANT:  I do. |
| 23 | THE COURT:  Okay. |
| 24 | THE DEFENDANT:  Now my understanding is that you |
| 25 | have retained counsel for purposes of these proceedings |

1       today.
2               I want you to understand that if you cannot afford
3       to pay for counsel, the court will appoint an attorney to
4       represent you.
5               You have the right to be represented by an attorney
6       from this point forward in connection with these charges.
7               Do you understand that?
8               THE DEFENDANT:  I do.
9               THE COURT:  All right.
10              You're here today because the grand jury has
11      returned an indictment charging you with three counts.
12              The first count charges you with knowingly and
13      intentionally recruiting, enticing, harboring, transporting,
14      providing, obtained advertising, maintaining, patronizing and
15      soliciting one or more persons, specifically John Doe's 1 and
16      2, individuals whose identities are known to the grand jury,
17      in and affecting interstate commerce and attempting to do the
18      same, and benefitting and attempting to benefit financially
19      and by receiving a thing of value from participation in a
20      venture which had engaged in such acts knowing that means of
21      force, threats of force, fraud and coercion and a combination
22      of such means would be used to cause these people to engage
23      in one or more commercial sex acts.
24              The second count charges you with a conspiracy to
25      engage in sex trafficking, and the third count charges you

1     with conspiring to commit forced labor.
2                Do you understand what the charges are?
3                THE DEFENDANT:  Yes.
4                THE COURT:  Okay.  Counsel, have you reviewed the
5     charges with your client and advised her of her rights?
6                MR. BUCKLEY:  Yes, we have, Your Honor.  We've
7     reviewed them briefly with her in the cell block.
8                THE COURT:  Okay.  Do you wish me to read the
9     charges aloud at this time?
10               MR. BUCKLEY:  No, we waive the public reading, Your
11    Honor.
12               THE COURT:  And is she prepared to enter a plea
13    this afternoon?
14               MR. BUCKLEY:  Yes, she enters a plea of not guilty.
15               THE COURT:  To all three counts.
16               MR. BUCKLEY:  Yes, Your Honor.
17               THE COURT:  All right.  Do we have a date for Ms.
18    Mack to appear before Judge Garaufis in this case?
19               MS. PENZA:   Yes, Your Honor.  The initial
20    appearance before Judge Garaufis will be May 3rd at 10:30
21    a.m.
22               THE COURT:  Okay.  All right.  So now we need to
23    deal with the issue of bail or detention.
24               What's the government's position with respect to
25    bail for Ms. Mack?

1           MS. PENZA:  Your Honor, the government's position
2  is that the defendant poses a danger to the community and a
3  risk of flight, but the government's position is that a
4  substantial bail package, commensurate with the defendant's
5  access to funds, would be sufficient to mitigate the risk to
6  the community, including intimidation of witnesses and the
7  risk of non-appearance.
8           If I may go into a little more detail, Your Honor?
9           THE COURT:  Go ahead.
10          THE DEFENDANT:  Based on the charges alone, which
11 are detailed in the letter we filed with the court, Ms. Mack
12 was one of the top members of a highly organized scheme which
13 was designed to provide sex to her co-defendant, who, I will
14 add, Your Honor, is currently incarcerated at the MDC, for
15 her own benefit and for her own status with the defendant.
16          Under the guise of female empowerment, Your Honor,
17 she starved women until they fit her co-defendant's sexual
18 ideal, and she targeted vulnerable women in order to do that.
19          There's also, Your Honor, a true risk of danger
20 here in the form of witness intimidation.
21          She has, based on the structure, a number of what
22 have been termed here slaves underneath her, who have pledged
23 vows of obedience and who literally have collateral.  She
24 literally has collateral on a number of the people who we
25 view to either be victims or potential witnesses in this

6

1    case. And she obviously has an ability to manipulate people
2    and to coerce them, based on the charges here.
3           In addition, Your Honor, we submit that the
4    defendant is a risk of flight.  She is facing a 15-year
5    mandatory minimum charge.
6           She has a lack of ties to the Eastern District.
7    She has apparent access to enormous personal wealth beyond
8    what we understand her to currently have access to, based on
9    what Pretrial has reported.
10          At the time when her co-defendant was arrested she
11   was present.  It was a villa that was costing $10,000 a week.
12   She has access to high ranking members of NXIVM, who have
13   enormous personal wealth themselves.
14          And, in addition, at this point, we understand that
15   there's a significant legal retainer and the government thus
16   far has not been provided with information as to how that
17   legal retainer is being paid.
18          So given those concerns, Your Honor, at this point
19   we have not been presented with a potential bail package from
20   the defendant.
21          We would want the opportunity to interview any
22   potential suretors to make sure they are in no way connected
23   to NXIVM.  That they would have the requisite moral suasion
24   over the defendant and to adequately assess her own wealth so
25   that the package is commensurate to the funds with which she

1   has access -- to which she has access.
2              THE COURT:  Okay.  All right.  Before I hear from -
3   - I assume you want to make a bail application this
4   afternoon?
5              MR. BUCKLEY:  Yes, Your Honor.
6              THE COURT:  All right.  So before I hear from you I
7   asked, in order to expedite these proceedings, that Pretrial
8   Services provide us with an oral report, rather than wait for
9   them to type up something.
10             So we have Pretrial Services officers here.  Can
11  you give us a report based on your interview?
12             MR. MOORE:  Sure.  My name is Ramon Moore.  I spoke
13  to the defendant and she advised that she was born -- she's
14  35 years old and she was born in Preetz, Germany, to the
15  union of Mindy and John Mack.
16             She relocated to the United States at two years old
17  and had resided in California with her parents for 16 years
18  and relocated to Vancouver, Canada for ten years, and lived
19  there alone.
20             She just moved back to New York.  She moved back to
21  New York ten years -- I'm sorry.  She moved back to New York
22  and she has been living in New York since December of 2017 at
23  an apartment with her wife, who is Nicole Klein.
24             She stated that she has two siblings who both
25  reside in California.  She stated that she has been married

1    to Ms. Klein since February of 2017 and that she's a green
2    card holder.
3             She stated that Ms. Klein is a self-employed
4    writer.  Her income is contingent upon the projects that she
5    receives, but makes approximately a thousand to $2,500 a
6    month. She stated that she has no children.
7             The highest level of education she's received is a
8    high school diploma from Los Alamedas High School in Los
9    Alamedas, California.
10            She stated that she is employed as an actress.  She
11   stated that she receives approximately $70,000 in residual
12   payments from the *Smallville* season, and she signs autographs
13   on the weekend twice per year and receives about $10,000 from
14   that.
15            She stated that she also owns a residence in
16   Clifton Park, New York that's valued at $220,000 that she
17   rents out and receives $500 a month for.
18            She stated that she's also a part-time actress.
19   She teaches acting skills part time.  She's been doing that
20   since 2016 and she makes approximately $100 a hour.
21            She stated that she has two bank accounts and a
22   profit sharing plan.  She -- the only asset that she has is
23   the house located in Clifton Park.  She stated that she has
24   no physical or mental health issues, as well as no substance
25   abuse history.

1          And she stated that if she's released, she can
2    continue to reside at her apartment in Brooklyn, New York.
3          Also she has a passport that was seized by the FBI
4    this morning.  She stated that she traveled to Mexico for
5    three weeks in March of 2018 and over the last five years
6    she's traveled regularly to Europe for business and leisure.
7    And that's about it.
8          THE COURT:  All right.  Thank you.
9          MR. BUCKLEY:  You're welcome.
10         THE COURT:  All right.  Counsel?
11         MR. BUCKLEY:  Yes, Your Honor.  If I may, just
12   briefly I'll start with the second point the government made
13   first, which is this client does not pose any risk of flight.
14         Just a couple of facts that I would like the court
15   to be aware of.
16         The first is when Mr. Raniere, the co-defendant,
17   was arrested in Mexico, Ms. Mack was also in Mexico at the
18   time.  She was aware of the investigation.  She was aware of
19   the possibility that she, too, may be charged.
20         And in spite of that, she returned to the United
21   States. But not only did she return to the United States,
22   Your Honor, once she retained us as counsel she authorized us
23   to reach out to the United States Attorney's Office to inform
24   them that we had been retained.  We affirmatively reached
25   out.

10

```
 1              And then we contacted the U.S. Attorney's Office
 2    two days prior to her anticipated return to the United States
 3    to try to find out whether she was going to be arrested and
 4    that this would be a surrender, or whether she was going to
 5    be permitted to return of her own accord.  We were provided
 6    no assurances of that.
 7              Notwithstanding the lack of assurances, Ms. Mack
 8    still returned to the United States on two days' notice to
 9    the government.
10              She resides here in the Eastern District of New
11    York.  She resides at a residence located not far from here
12    and indeed when she was arrested earlier today, they arrested
13    her at that residence.
14              Those facts, Judge, we think strongly undercut any
15    argument here that this defendant poses a risk of flight.
16    But those aren't the only facts for the court to consider.
17              Ms. Mack has substantial ties to the United States.
18    She is a U.S. citizen.  Her parents live her in the United
19    States.  She has other family who reside in the United
20    States.  She owns property in the Northern District of New
21    York.  She rents her property here in the Eastern District.
22              All of her finances and assets are located here in
23    the United States.  She doesn't possess any foreign
24    properties or assets and her professional career is here.
25              In addition to those factors, those strong ties not
```

1   just to this community but to the United States as a whole,
2   Ms. Mack has every incentive to face the charges.
3               As I noted, she returned voluntarily with no
4   assurances about whether she would be arrested or not with
5   knowledge that this investigation has been launched and with
6   knowledge of the charges that were levied against Mr.
7   Raniere.
8               The government in its submission points to the
9   strength of its case. I'm not going to belabor it, Judge,
10  given that it's a Friday afternoon, but the allegations
11  contained in the indictment are only that.  They are
12  allegations.
13              The hard facts establish that Ms. Mack is not a
14  risk of flight.  To the extent there is concern about her
15  prior travel, that concern is readily ameliorated by the
16  surrender of her passport and an agreement by Ms. Mack that
17  she will not apply or seek new documents.
18              And even were she to leave, she's a U.S. citizen,
19  Judge.  A red notice would follow her and subject her to
20  arrest anywhere in the world and return here.
21              THE COURT:  Can I just interrupt for a second,
22  because I thought I misheard the pretrial officer.  I thought
23  he said something about a green card.
24              MR. MOORE:   Yes.  She stated that her wife --
25  she's a green card holder.

12

1    THE COURT: Her wife is.
2    MR. MOORE: Yes.
3    THE COURT: Okay. That's what I misunderstood.
4    Okay. Go ahead.
5    MR. BUCKLEY: Thank you, Judge.
6    So against all of those facts, Judge, there simply
7    is not a legitimate risk of flight, let alone a risk of
8    flight that cannot be addressed through the imposition of
9    conditions.
10    Ms. Mack is prepared to sign a personal
11    recognizance bond today to ensure her appearance. She is
12    prepared to have additional co-signers come to co-sign that
13    bond.
14    And if the court believes it's necessary, she is
15    prepared to have that bond secured by property, as well as by
16    -- not just her property, but property from her parents.
17    So when the court considers that, there's simply no
18    need to detain this defendant through the weekend to permit
19    the satisfaction of those conditions.
20    The only argument advanced by the government about
21    the need for detention is a speculative argument that she may
22    threaten others or try to tamper with witnesses.
23    But her detention through the weekend or being
24    released next week in no way addresses that. It is a
25    speculative concern.

1   She has demonstrated herself not to be a risk of
2   flight. She's prepared to sign a bond and we will be
3   prepared to satisfy any additional conditions Your Honor
4   believes are necessary within a reasonable time, whether it
5   be ten days, or 14 days, to allow us to secure the necessary
6   documents for posting of additional property.
7   So unless the court has any other questions, or
8   unless my colleague, Mr. McGovern, would like to add
9   anything, we respectfully submit that the defendant should be
10  released today on a personal recognizance bond, secured by
11  her own signature with some period of time to satisfy the
12  additional conditions that Your Honor seeks.
13  THE COURT: All right. What's the government's
14  view here?
15  MS. PENZA: Your Honor, the government's position
16  is that a personal recognizance bond in a case involving a
17  15-year mandatory minimum sentence is wholly inappropriate.
18  Your Honor, just to raise a few points, the
19  government is not held to the defendant's offer through her
20  attorneys to self surrender to law enforcement.
21  The investigation involves a number of witnesses
22  and it's the government's first priority not to compromise
23  the integrity of the investigation.
24  Moreover, at the time when she did fly into the
25  country, at that time she had no phone on her and no computer

14

1   on her, which we -- the government submits has been a pattern
2   of members of the NXIVM community coming into the country
3   without those devices to avoid law enforcement seizing those.
4            Additionally, based on that argument alone, the
5   defendant and her attorney have been aware for some time
6   about the possibility of her arrest and they should have
7   identified and secured sureties.
8            So given the nature -- unless Your Honor wants to
9   hear more, the government's position is that what they are
10  proposing today is wholly unsatisfactory and the government
11  would urge that if Ms. Mack does wish to be released next
12  week, that we're not talking ten, 14 days before they put a
13  package together.
14           The government needs to be made aware of what her
15  access to assets is so that we can come up and agree with, if
16  possible, with defense counsel, about a package that will
17  adequately protect the community and assure Ms. Mack's
18  appearance in court.
19           THE COURT:  Counsel, there seems to be some
20  discrepancy between the information the government the
21  provided in your initial proffer and the information provided
22  by defendant's counsel as to her assets.
23           You indicated, I believe, in the initial argument
24  that you thought she had substantial assets. They're telling
25  me that all she owns is this $200,000 property in Clifton,

15

1    New York, and she makes very little in terms of salary, from
2    I guess the residuals from her acting job previously, and
3    some current acting teaching that she does.
4             So I'm a little confused as to what exactly is the
5    status of her resources here.
6             MS. PENZA:  Well, Your Honor, that's -- excuse me.
7    Your Honor, that is one of our concerns.  We do -- the
8    government does not have a fair picture right now of her
9    access to funds.
10            The very fact of Kobre & Kim's being retained alone
11   indicated that there was a very high retainer.  We understand
12   that there is a high retainer and our concern is that that
13   means there are NXIVM contacts, these high net worth
14   individuals that we've talked about who are providing Ms.
15   Mack with funds and whom she would have access to funds from.
16            So that's why in terms of determining an
17   appropriate package, we need to flesh that out, Your Honor.
18            MR. BUCKLEY:  If I may, Your Honor.  It's an absurd
19   argument that we're taking funds from people related to
20   NXIVM.  The government has no real right to inquire into the
21   source of our funds at this stage, but -- nor how much she's
22   retained Kobre & Kim for.  I think that argument is, frankly,
23   ridiculous.
24            MS. PENZA:  Your Honor --
25            THE COURT:  Well, I considered --

16

1        MS. PENZA:  I'm sorry.

2        THE COURT:  -- the government's argument and I
3   considered defendant's arguments as well.

4        Honestly, I don't believe this bail package, as
5   offered today, is sufficient, given the nature of the
6   charges, the 15-year mandatory minimum, a personal
7   recognizance bond not secured by anything other than the
8   defendant's own signature is not, in my view, sufficient.

9        Now that's not to say that there might not be a
10  package that you could put together, but I am not going to
11  release her this evening on her own signature without
12  somebody coming in and taking responsibility and posting
13  significant property to secure this.

14       The government's allegations in this case involve a
15  far reaching conspiracy and, obviously, the defendant is
16  presumed to be innocent until that is proven, but these are
17  serious charges.

18       And while you've made an impassioned plea that she
19  is not a risk of flight, I respectfully disagree.  She may
20  not have realized that she was looking at 15 years in jail.

21       So that being said, I'm going to enter an order of
22  detention at this time.  If you would like to come back on
23  Monday with a more put together package, with suretors and
24  property, and give the government notice so that they can
25  interview those individuals who you are offering as suretors,

1     then that's fine.

2              If you don't think you can put it together by
3     Monday, I'll enter a permanent order of detention at this
4     time and I'll mark it with leave for you to come back
5     whenever you're ready.

6              MR. BUCKLEY:  Thank you, Your Honor.

7              Just to clarify two points though.  One, we are
8     prepared to post both the property in Albany and her -- we
9     have been in contact with her mother, who will be one of the
10    suretors, as well as her father, who will be the other
11    suretor, and they are prepared to post her childhood home in
12    California, which they also own.

13             THE COURT:  Right.  But if you came here all the
14    time, you would know that before I'm going to release anybody
15    on that, I need to see the mortgage, I need to see the deeds.
16    I need to see the suretors.  And I don't have any of that
17    today.

18             So that's why I'm saying these may be appropriate
19    securities for her bail, but your package is -- your ducks
20    are not in a row, if you will.

21             So I'm telling you I'm not going to release her
22    tonight, but you certainly can come back whenever you feel
23    you're ready to do that.

24             MR. BUCKLEY:  Okay.  Thank you, Your Honor.

25          (Counsel and clerk confer.)

18

```
 1                THE COURT:  Okay.  Is there anything else this
 2     evening?
 3                MS. PENZA:  Your Honor, the -- Judge Garaufis has
 4     given us permission to seek an order of excludable delay.
 5                The government intends before the next status
 6     conference to begin the process of producing discovery and we
 7     also would entertain any initial plea negotiations that the
 8     defendant would like to have.
 9                So in light of that we would ask that time be
10     excluded until the May 3rd conference.
11                THE COURT:  Counsel, is that what your client
12     wishes to do?
13                MR. BUCKLEY:  We have no objection, Your Honor.
14                THE COURT:  Okay.  Have you discussed it with Ms.
15     Mack?
16                MR. BUCKLEY:  We did.  Yes, Your Honor.
17                THE COURT:  You've explained it.
18                MR. BUCKLEY:  Yes, Your Honor.
19                THE COURT:  So Ms. Mack, I want to make sure you
20     understand what we're talking about.
21                Under the Constitution and the laws of the United
22     States you're entitled to a speedy and public trial by jury
23     commencing within 70 days of the filing of the indictment.
24     That's the charge we just talked about a minute ago.
25                If the government fails to bring you to trial
```

19

1    within that requisite time period, that could later be the
2    basis for you to move to dismiss the charges against you.
3              What the government has indicated to me is they
4    would like me to exclude the time from today until --
5              MS. PENZA:  May 3rd, Your Honor.
6              THE COURT:  -- May 3rd, when you'll see the
7    district judge on this case, because during that period of
8    time the government's going to be providing your attorneys
9    with the evidence that they have collected regarding the
10   charges here, and your attorneys and the government are going
11   to have a conversation so see if the case can be resolved
12   without the need for a trial.
13             And it's difficult to both engage in plea
14   negotiations and also prepare for trial at the same time.
15             Do you understand all of that?  Speak up.
16             THE DEFENDANT:  Yes.
17             THE COURT:  Okay.  Have you discussed this with
18   your attorneys?
19             THE DEFENDANT:  Yes.
20             THE COURT:  Okay.  Do you wish me to enter this
21   order of excludable delay while these plea discussions go
22   forward?
23             THE DEFENDANT:  Yes.
24             THE COURT:  Okay. I think --
25             MR. BUCKLEY:  So you need to sign.

1        (Pause.)
2            THE COURT:  All right. I'm going to approve the
3    order to excludable delay finding that it is in the best
4    interest of both the public and the defendant while plea
5    negotiations continue.
6            All right.  Anything else?
7            MS. PENZA:   Not from the government, Your Honor.
8            MR. BUCKLEY:  No, Your Honor.
9            MS. PENZA:   Thank you.
10           THE COURT:  All right.  Thank you very much.
11       (Proceedings concluded at 4:52 p.m.)
12
13     I, CHRISTINE FIORE, court-approved transcriber and
14   certified electronic reporter and transcriber, certify that
15   the foregoing is a correct transcript from the official
16   electronic sound recording of the proceedings in the above-
17   entitled matter.
18
19     *Christine Fiore* (signature)
20   _____          April 23, 2018
21   Christine Fiore, CERT
22
23
24