```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *    Case No. 18-CR-204(NGG)
                              *
                              *    Brooklyn, New York
                              *    April 24, 2018
    v.                        *
                              *
ALLISON MACK,                 *
                              *
         Defendant.           *
                              *
* * * * * * * * * * * * * * * *

       TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPLICATION
          BEFORE THE HONORABLE VIKTOR V. POHORELSKY
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:           MOIRA KIM PENZA, ESQ.
                              TANYA HAJJAR, ESQ.
                              Asst. United States Attorney
                              United States Attorney's Office
                              271 Cadman Plaza
                              Brooklyn, NY 11201


For the Defendant:            SEAN BUCKLEY, ESQ.
                              WILLIAM McGOVERN, ESQ.
                              Kobre & Kim, LLP
                              800 Third Avenue
                              New York, NY  10022
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1      (Proceedings commenced at 2:38 p.m.)
2              THE CLERK:  Criminal cause for a bail application.
3      Case number 18-CR-204, United States versus Allison Mack.
4              Counsel, your name for the record.
5              MS. PENZA:  Moire Kim Penza and Tanya Hajjar for
6      the United States.  Good afternoon, Your Honor.
7              MR. BUCKLEY:  Good afternoon, Your Honor.  Sean
8      Buckley and William McGovern, of the law firm Kobre & Kim,
9      LLP, on behalf of Ms. Mack.
10             THE COURT:  Good afternoon.  The purpose of the
11     proceeding today, as I understand it, is to address the
12     question of bail?
13             MS. PENZA:  That's correct, Your Honor.
14             THE COURT:  Is that the only issue for the Court?
15             MS. PENZA:  Yes, Your Honor.
16             THE COURT:  All right.  I've been presented with a
17     proposed order setting conditions of release, which includes
18     an appearance bond in the amount of $5 million, with co-
19     signers, as I understand it.
20             Am I correct in understanding that this set of
21     conditions of release and bond have been agreed upon by both
22     the government and the defendant?
23             MS. PENZA:  That's correct, Your Honor.
24             MR. BUCKLEY:  That's correct, Judge.
25             THE COURT:  All right.  There's one thing that,

1  again, I find a little confusing. There's -- item No. 3 in
2  the condition of release says that "Defendant must avoid and
3  not go to any of the following locations," and it says "See
4  paragraph 5."
5      Paragraph 5 says "home detention," but it doesn't
6  describe any of the following -- any locations where the
7  defendant is not to go.
8      And paragraph 5, if that's a reference to
9  attachment A, that also contains no locations to which the
10 defendant is not supposed to go. So I have some difficulty
11 understanding this.
12     MS. PENZA: Well, Your Honor, the government's
13 position -- I think everybody is in agreement, is that the
14 defendant will be on home detention.
15     There have been -- there has been nothing put
16 forward in terms of places where she would want to go in
17 terms of like religious services or things like that.
18     So right now the only places that she would go
19 would be the paragraph covered by the home detention
20 paragraph, which includes court appearances, attorney visits.
21     THE COURT: Well, I also find then attachment A
22 confusing because item 1 in attachment A says "The defendant
23 must remain in and may not leave the Central District of
24 California, the Eastern District of New York, and the
25 Southern District of New York."

1                And what you're telling me, I think, is that the
2     defendant is supposed to -- is on home detention.  So the
3     defendant couldn't leave the Central District of California
4     because the defendant couldn't even go there.
5                MS. PENZA:  Your Honor, she will be residing in the
6     Central District of California, Your Honor.
7                THE COURT:  I see.  Well, then -- and the Southern
8     District of New York?
9                MS. PENZA:  That's where Kobre & Kim is located.
10               THE COURT:  So with Pretrial Services' approval,
11    the defendant will be permitted to travel to the Southern
12    District of New York?
13               MS. PENZA:  That's correct, Your Honor.
14               THE COURT:  All right.
15               MR. BUCKLEY:  And, Your Honor, if I may, just to
16    clarify that, the provision provides that the defendant can
17    leave the residence in the Central District of California,
18    with approval from Pretrial Services, provided that she
19    applies ahead of time, absent an emergency.
20               So we anticipate that to the extent it does become
21    necessary for her to have the need to leave, whether it's to
22    visit with counsel, or for employment or other purposes, we
23    will clear that all with Pretrial Services ahead of time.
24               THE COURT:  Okay.  So one of the conditions of
25    release then, I gather, is that Ms. Mack will be residing in

1      -- at a specific location in California?
2              MR. BUCKLEY:  That's correct, Judge.
3              THE COURT:  That should be added to this document
4      as well, it seems to me -- unless I'm missing that.
5              THE CLERK:  I think that's in attachment B.
6              THE COURT:  Okay.  It doesn't specifically say that
7      she has to reside there.  So what is the address at which she
8      will reside?
9              MS. PENZA:  It is the one covered by the little
10     Roman numeral two on attachment B under No. 1.
11             THE COURT:  Understood.  Okay.  So I'm going to add
12     that as another condition of release.
13         (Pause.)
14             MR. BUCKLEY:  And then, Judge, if I may, just one
15     other point of clarification.
16             We've talked with the prosecutors about this, but
17     we just want the record to be clear, that paragraph 2 in
18     attachment A pertains to Ms. Mack only.
19             It does not in any way limit defense counsel's
20     right or ability to confer with anyone, including the various
21     individuals listed in paragraph 2.
22             THE COURT:  Understood.  Thank you.
23         (Pause.)
24             THE COURT:  There's a place for Melinda Mack to
25     cosign?  And I presume Jonathan Mack as well, right?

```
 1                MR. BUCKLEY:  Yes, Your Honor.  Although Mr. Mack
 2      is in California.  And we are going to make arrangements to
 3      have the bond transmitted to the district court out there so
 4      that he can sign it.
 5                THE COURT:  Melinda Mack is in court?
 6                MR. BUCKLEY:  Yes, she is, Your Honor.
 7                THE COURT:  All right.
 8                THE CLERK:  Can we bring her up?
 9                THE COURT:  Well, let me tender this now for their
10      review and signature.
11           (Pause.)
12                THE CLERK:  Have your client sign in the lower
13      right hand corner.
14                The judge is going to ask you some questions, so
15      I'm going to put you under oath.  Please raise your hand.
16           (The suretor is sworn.)
17                THE CLERK:  Please state your name for the record
18      and speak loudly.  It's being recorded.
19                MS. MACK:  Okay.
20                THE CLERK:  Your name?
21                MS. MACK:  Melinda Mack.
22                THE CLERK:  Thank you.
23           (Pause.)
24                THE COURT:  Ms. Mack, let me just ask you to
25      confirm that this is your signature on this document.
```

1           MS. MACK:  Yes, it is.
2           THE COURT:  It's represented to the court that you
3   are Allison Mack's mother.  I take it that's true?
4           MS. MACK:  Yes.
5           THE COURT:  And I understand that you are a
6   co-owner of property at 3222 Orangewood Avenue in Rossmoor,
7   California?
8           MS. MACK:  Yes.
9           THE COURT:  And the other co-owner is Jonathan
10  Mack?
11          MS. MACK:  Yes.
12          THE COURT:  I take it that's your husband?
13          MS. MACK:  Yes.
14          THE COURT:  Are you the sole owners of that
15  property?
16          MS. MACK:  Yes.
17          THE COURT:  All right.  Did you have an adequate
18  opportunity to review the document that you signed, and was
19  it explained to you also by Ms. Mack's -- your daughter's,
20  counsel?
21          MS. MACK:  Yes.
22          THE COURT:  Do you have any questions about the
23  document?
24          MS. MACK:  No.
25          THE COURT:  All right.  You should understand that

```
1    by signing the document you've obligated yourself to pay $5
2    million in the event that your daughter fails to appear in
3    court when she's required to appear, or if she otherwise
4    violates any of the conditions of release that are set forth
5    in the document that you signed.
6              Do you understand that?
7              MS. MACK:  Yes.
8              THE COURT:  If the obligation becomes payable, the
9    government can seize and sell the property that you own, use
10   the proceeds of that sale to pay down the obligation.
11             But if it's not sufficient to satisfy the entire
12   obligation, you would still be liable for the balance, any
13   balance that was due.
14             Do you understand that?
15             MS. MACK:  (No audible response.)
16             THE COURT:  Do you understand that?
17             MS. MACK:  Yeah.
18             THE COURT:  Do you have any questions about it?
19             MS. MACK:  (No audible response.)
20             THE COURT:  All right.  Ms. Allison Mack, you
21   signed this document as well?
22             THE DEFENDANT:  Yes, sir.
23             THE COURT:  You've taken the same obligation; that
24   is, to pay $5 million in the event that you fail to appear in
25   court when you're required to appear or, if you otherwise
```

9

1    violate any of the conditions of release.
2              Do you understand that?
3              THE DEFENDANT:  Yes, sir.
4              THE COURT:  And I gather -- and I'm given to
5    believe anyway that you own property that's posted here as
6    well?
7              THE DEFENDANT:  Yes, sir.
8              THE COURT:  If the obligation becomes payable, then
9    you -- that property could be seized, sold, and the proceeds
10   used to pay the obligation.  If it's not sufficient, you'd be
11   still liable for the balance.
12             Do you understand that?
13             THE DEFENDANT:  Yes, I do.
14             THE COURT:  I should also warn you that if you fail
15   to appear or if you otherwise violate conditions of release,
16   you can be arrested and prosecuted for the crime of bail
17   jumping, which carries substantial additional penalties over
18   and above those applicable to the crimes that you are now
19   charged with.
20             Is there another appearance scheduled at present,
21   counsel?
22             MS. PENZA:  Your Honor, there is currently an
23   appearance scheduled for May 3rd before Judge Garaufis.  I
24   understand from defense counsel that they may seek to waive
25   Ms. Mack's appearance for that -- for that initial

10

1      conference.
2              THE COURT:  Mr. Jonathan Mack is to sign by May
3      8th.  Is that an agreed upon date?
4              MS. PENZA:  May 4th, Your Honor.
5              THE COURT:  What is the government's position with
6      respect to release pending the second signature?
7              MS. PENZA:  Your Honor, the government is -- does
8      consent to Ms. Mack's release pending the second signature.
9              We have also reached an agreement with defense
10     counsel regarding release pending the securing of the
11     property -- properties and bank accounts.
12             There are -- for the property that is owned by Ms.
13     Mack's -- by Melinda Mack, either that property or the bank
14     account that belongs to the defendant, Ms. Mack, one of those
15     will be posted by May 4th, and then the remainder will be
16     posted by May 11th.
17             THE COURT:  Okay.  Are you -- I do not see, unless
18     I'm overlooking it, any bank account other than the
19     retirement account.
20             Is that what you're talking about?
21             MS. PENZA:  That's the account that we're referring
22     to, Your Honor.
23             THE COURT:  All right.  And you have agreed upon
24     dates for those liens to be accomplished, which you've just
25     stated?

1            MS. PENZA:  Yes, Your Honor.
2            THE COURT:  All right.
3            MS. PENZA:  Your Honor, if I may.  I'm sorry.
4       We would ask that the defendant be advised
5  regarding the specific condition in this bond.
6            As the government put forth in our detention
7  letter, there were serious concerns regarding risk of flight
8  and potential danger to the community, and so we would like
9  especially the condition regarding the inability to associate
10 with any current or former members of NXIVM to be relayed to
11 the defendant in the presence of Your Honor.
12           THE COURT:  All right.  Well, you're not asking me
13 to read the entire set of conditions I gather?
14           MS. PENZA:  No, Your Honor.
15           THE COURT:  All right. But you want me to just
16 emphasize that.  I think that's fair, given the nature of the
17 charges.
18           I do want to confirm with Ms. Mack that you have
19 reviewed the various conditions of release.  You're aware of
20 what they require you to do or not do I take it?
21           THE DEFENDANT:  Yes.
22           THE COURT:  Okay.  But in particular you are
23 directed not to associate or have any contact, except in the
24 presence of your attorney, with anyone named as a co-
25 defendant or any co-conspirator or anybody, -- any individual

12

1  currently or formerly employed by or associated with NXIVM or
2  any affiliated or constituent entity.
3  　　　　　So basically you should avoid contact with anybody
4  that you know to have been connected in any way with NXIVM,
5  in addition to your co-defendant and any other co-
6  conspirators.
7  　　　　　Do you understand that?
8  　　　　　THE DEFENDANT:  Yes, sir.
9  　　　　　THE COURT:  All right.  Is there anything further?
10 　　　　　MS. PENZA:  Not from the government, Your Honor.
11 　　　　　MR. BUCKLEY:  Not from defense counsel, thank you,
12 Judge.
13 　　　　　THE COURT:  All right.  We're adjourned?
14 　　　　　MS. QUIJIJE:  Your Honor?
15 　　　　　THE COURT:  Yes.
16 　　　　　MS. QUIJIJE:  Sorry, Your Honor.  Jeannine Quijije,
17 Pretrial Services.
18 　　　　　Your Honor, Pretrial was just made aware that the
19 defendant will be living in California.  There is a home
20 detention component to this.  We need to call California to
21 inquire whether they use the same technology as we do.  So we
22 need to make the phone calls.  So I don't know if you want to
23 just hold on until we try to figure that portion out?
24 　　　　　THE COURT:  Well, let me ask this.  What is the --
25 is the plan for Ms. Mack to travel as soon as possible to

1      California?

2              MR. BUCKLEY:  Yes, Your Honor.

3              THE COURT:  And you wanted -- I gather Pretrial

4      wants to ensure that upon arrival there that Pretrial in

5      California would be in a position to accomplish the

6      electronic monitoring?

7              MS. QUIJIJE:  Correct, Your Honor.  And in

8      addition, Your Honor, there is a cyber component to this.

9              We don't know if California has the same -- if they

10     even have the ability to monitor the cyber portion of it.  So

11     we would need to make a couple of phone calls before we can

12     assure the Court that the conditions will be met.

13             THE COURT:  Well, I don't know.  The cyber

14     component -- you mean the access to computers?

15             MS. QUIJIJE:  Correct, Your Honor.

16             THE COURT:  And the internet devices?

17             MS. QUIJIJE:  Correct, Your Honor.

18             MR. BUCKLEY:  Judge, those are all conditions that

19     we have agreed and consented to.  That said, we don't think

20     that there's a need to delay Ms. Mack's release.  She is

21     going to reside with her parents.  She's going to comply with

22     these terms.  And those conditions can be put into place in a

23     reasonable amount of time.  And I think the parties'

24     agreement here that she would be released upon her signature

25     and that of her mother.

14

1           THE COURT:  Well, does the government want to be
2    heard on this?
3           MS. PENZA:  Your Honor, perhaps if the defendant
4    can agree not to use a cellular device or internet capable
5    device in the amount of time it takes for us to sort out
6    whatever needs to be done with respect to paragraph 6 --
7           THE COURT:  Well, it's given that Ms. Mack is
8    prohibited from using any such devices, except as permitted
9    by the specific terms.  Those terms go into effect now.
10          She doesn't have -- she's already agreed to them,
11   so let's not be -- let's not have any lack of clarity about
12   that.
13          The only question is is, you know, how effective
14   the government Pretrial Services Office can be in monitoring
15   any such activity.
16          But then -- and I guess the question for me is
17   whether the release should be delayed until we know what
18   they're capabilities are?
19          The problem is if it turns out that there are no
20   such capabilities, what's the alternative?  I mean, I guess
21   what I'm saying is suppose you find out nothing can be done?
22   I'm presuming that there's electronic monitoring in
23   California --
24          MS. QUIJIJE:  Correct, right.
25          THE COURT:  -- because I don't know of any

15

1  jurisdiction that doesn't have that.
2              MS. PENZA:  Right.  It's a matter of the GPS.
3              MS. QUIJIJE:  Right.  Correct, Your Honor.  So we
4  need to just make sure that the District of California has
5  the same technology that we have so that we fit her --
6              THE COURT:  I understand that.  But what if they
7  don't?
8              MS. QUIJIJE:  They have a component of a
9  technology, not necessarily what we use.  But when we -- when
10 she leaves this courtroom and we put her with a bracelet, we
11 need to make sure that they have some ability to either
12 track --
13             THE COURT:  Oh, you're going to install the
14 bracelet here?
15             MS. QUIJIJE:  Correct.
16             THE COURT:  Well, why don't we do this.  I'm going
17 to sign the order permitting release.  And make the phone
18 calls.
19             And if you run into difficulty -- it's going to
20 take a couple of hours, I think, until Ms. Mack is actually -
21 - she's going to meet with you anyway after release.
22             MS. QUIJIJE:  Right.
23             THE COURT:  So let's see what we find out, and
24 we'll deal with a problem, if there is one, once we find out
25 if there is one.  Okay?

1           Anything else?
2                MS. PENZA:  Not from the government, Your Honor.
3                MR. BUCKLEY:  No, thank you, Your Honor.
4                THE COURT:  All right.  We're adjourned.  Thank
5     you.
6                MS. PENZA:  Thank you.
7                MR. MCGOVERN:  Thank you.
8           (Proceedings concluded at 2:57 p.m.)
9
10         I, CHRISTINE FIORE, court-approved transcriber and
11    certified electronic reporter and transcriber, certify that
12    the foregoing is a correct transcript from the official
13    electronic sound recording of the proceedings in the above-
14    entitled matter.
15
16    *[signature: Christine Fiore]*
17    _____         April 26, 2018
18    Christine Fiore, CERT