1                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
2

3  -----------------------------------X
                          :
4  UNITED STATES OF AMERICA,    :
                          :  18-CR-00204 (NGG)
5                          :
                v.          :
6                          :  225 Cadman Plaza East
  KEITH RANIERE, *also known as*  :  Brooklyn, New York
7  Vanguard,                :
                          :
8              Defendant.   :  November 6, 2018
  -----------------------------------X
9

      TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
10        BEFORE THE HONORABLE VERA M. SCANLON
           UNITED STATES MAGISTRATE JUDGE
11

APPEARANCES:
12

For the Government:       MOIRA PENZA, ESQ.
13                     TANYA HAJJAR, ESQ.
                     United States Attorneys Office
14                     Eastern District of New York
                     271 Cadman Plaza East
15                     Brooklyn, New York 11201

16  For Keith Raniere:       MARC AGNIFILO, ESQ.
                     TENY ROSE GERAGOS, ESQ.
17                     Brafman & Associates
                     767 Third Avenue
18                     New York, New York 10017

19                     DANIELLE RENEE SMITH, ESQ.
                     DerOhannesian & DerOhannesian
20                     677 Broadway
                     Suite #707
21                     Albany, New York 12207

22  For Allison Mack:        WILLIAM F. MCGOVERN, ESQ.
                     SEAN STEPHEN BUCKLEY, ESQ.
23                     Kore & Kim, LLP
                     800 Third Avenue
24                     New York, New York 10022

25           (Appearances continue on next page.)

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

```
 1                                                                    2

 2

 3      APPEARANCES (Continued):

 4

 5      For Lauren Salzman:          HECTOR DIAZ, ESQ.
                                     Quarles & Brady, LLP
 6                                   Two North Central Avenue
                                     Phoenix, Arizona 85004

 7
        For Kathy Russell:          JUSTINE A. HARRIS, ESQ.
 8                                   Sher Tremonte, LLP
                                     90 Broad Street
 9                                   23rd Floor
                                     New York, New York 10004

10
        For Nancy Salzman:          ROBERT SOLOWAY, ESQ.
11                                   Rothman Schneider Soloway &
                                        Stern, P.C.
12                                   100 Lafayette Street
                                     Suite #501
13                                   New York, New York 10013

14      For Clare Bronfman:         KATHLEEN ELIZABETH CASSIDY, ESQ
                                     Hafetz & Necheles, LLP
15                                   10 East 40th Street, 48th Floor
                                     New York, New York 10016

16
        Court Transcriber:          RUTH ANN HAGER, C.E.T.**D-641
17                                   TypeWrite Word Processing Service
                                     211 N. Milton Road
18                                   Saratoga Springs, New York 12866

19

20

21

22

23

24

25
```

3

1   (Proceedings began at 4:07 p.m.)

2           THE COURT:  Criminal cause for a status conference,

3   case number 18-CR-204, <u>United States v. Keith Raniere, Allison</u>

4   <u>Mack, Clare Bronfman, Kathy Russell, Lauren Salzman and Nancy</u>

5   <u>Salzman</u>.

6           Counsel, can you state your name for the record

7   starting with the Government?

8           MS. PENZA:  Good afternoon, Your Honor.

9           THE COURT:  Good morning.

10          MS. PENZA:   Moira Penza, Tanya Hajjar and with your

11  permission an intern from our office, Melanie English for the

12  United States.

13          THE COURT:  Sure.  I have my intern in a private

14  place up here.

15          MS. PENZA:  Good afternoon.  Yeah.  Thank you, Your

16  Honor.

17          THE COURT:  All right.  Thanks.

18          MR. AGNIFILO:  Good afternoon, Your Honor.  Mark

19  Agnifilo, Teny Geragos and Danielle Smith on behalf of Keith

20  Raniere and Mr. Raniere is incarcerated.  He's waives an

21  appearance here today.

22          THE COURT:  Okay.  All right.  If all counsel could

23  address that point about your client not being here.

24          MR. MCGOVERN:  Good afternoon, Your Honor. Bill

25  McGovern together with Sean Buckley on behalf of Allison Mack,

4

1  who has also waived her appearance here today.

2          THE COURT:  Okay.

3          MR. DIAZ:  Good afternoon, Your Honor.  Hector Diaz

4  for Lauren Salzman.  We request Ms. Salzman's presence be

5  waived.

6          THE COURT:  Okay.

7          MR. SOLOWAY:  Good afternoon, Your Honor.  Robert

8  Soloway for Nancy Salzman and she too waives her appearance

9  for today.

10          THE COURT:  Okay.

11          MS. HARRIS:  Good afternoon, Your Honor.  Justine

12  Harris for Kathy Russell.  She waives her appearance with the

13  Court's permission.

14          THE COURT:  Okay.

15          MS. HARRIS:  Thank you.

16          MS. CASSIDY:  Good afternoon, Your Honor.  Kate

17  Cassidy and Caroline Grossbans [ph.] on behalf of Clare

18  Bronfman and Ms. Bronfman waives her appearance today.

19          THE COURT:  Okay.

20          MS. CASSIDY:  Thank you.

21          THE COURT:  I think we've got everybody.  All right.

22  So this is really checking in to make sure everything is

23  moving along.  And it's my deputy's thing to counsel at the

24  front table, if you're speaking if you could just please use

25  the microphone because we're making a recording of today's

5

1   proceeding.

2           So from my perspective there's really just the three

3   issues and -- but you may have others, so I'm happy to hear

4   them.  One is just to make sure the discovery is moving along

5   and whether there are any issues.  Certainly the Government's

6   growing chart suggests that there have been a fair amount of

7   documents exchanged -- has been a fair number of documents

8   exchanged and some developing issues, I guess, with these new

9   search warrants.  Two is just where you think you're going to

10  be on a schedule related to privilege.  And the other -- I'm

11  not even sure this is an issue but I guess it is from the

12  docket -- there was the motion filed on 158 and then the stip,

13  I think is at 180, 178, 180.  The motion is still outstanding

14  and the question is, is there any reason the motion isn't

15  withdrawn or is there any outstanding issue from that?  That's

16  the Nancy Salzman devices point.  And if there are or is any

17  outstanding point or points if you could just let me know what

18  that is.

19          So in any particular order?  We'll start with the

20  Government.

21          MS. PENZA:   Thank you, Your Honor.  Would you

22  prefer me to sit or stand?

23          THE COURT:  Everybody can stay seated.  We --

24  usually I can tell the difference in the trial lawyers and

25  non-trial lawyers.  Trial lawyers can't stand sitting.  This

6

1   is a room of trial lawyers and we're making a recording.  It's

2   much easier if you are close to the microphone.  I'll get a

3   better -- I can hear you and we'll get a better recording.

4              MS. PENZA:  Thank you, Your Honor.  Regarding

5   discovery the Government believes that we have been proceeding

6   expeditiously and certainly on schedule with what we had

7   proposed to Your Honor taking your point three and in

8   conjunction we have produced an enormous amount of data

9   pursuant to the stipulation.  We agree that the motion is --

10  no longer needs to be pending.  We believe the stipulation

11  covered that and we have made all of the devices that were

12  accessible to us available to defense counsel from Nancy

13  Salzman's house.

14             And otherwise, we have been complying with the

15  deadlines that we had set and our searches, of course, are

16  ongoing as we've noted.  We have obtained additional search

17  warrants for certain data.  That is included in -- that we

18  have included some of that in the chart.  We do not have the

19  data yet.  So in terms of any kind of further discussion it's

20  really impossible to have a discussion regarding how much

21  additional data that will be and kind of our timing on that,

22  but we still believe we are in the proc -- we will be in a

23  process to produce that on a reasonable time -- timetable such

24  that defense counsel will have it in conjunction with all the

25  other dates that have been set.

7

1        And in terms of privilege, Your Honor, I think that

2   remains -- that's, in our view, the biggest issue right now.

3   Our privilege review team has been working with defense

4   counsel.  There are a number of outstanding issues.  It is --

5   there are complexities to the privilege analysis.  Different

6   defendants have raised different types of privilege as to the

7   same attorneys.  There were generalities regarding one of the

8   things that in order for our privilege team to do a full

9   analysis that they need is, what are the representations that

10  the different -- the different attorneys actually represented

11  the defense -- the defendants are claiming that they

12  represented them in because depending on the function of the

13  lawyer there -- it may or may not -- things may or may not be

14  privileged.  So there are still a lot of complexities there.

15       We have -- the privilege review team has been

16  speaking to defense counsel and our understanding was that

17  Friday would be a reasonable date for them to answer the

18  outstanding questions.  So the Government requested in our

19  letter that Friday be set as a deadline for those -- for those

20  questions to be answered.

21       And so that is the Government's -- the Government's

22  update.  We're happy to answer additional questions should

23  Your Honor have them.

24       THE COURT:  This is your letter at 188, the Friday,

25  November 9th date that you're proposing?

8

1          MS. PENZA:   Yes, Your Honor.

2          THE COURT:  All right.  Do you have a sense at all

3    and maybe this is just not the area you're working on, but

4    your colleague will get the information.  You describe it as a

5    first step.  Any idea how involved the next steps are?

6          MS. PENZA:   I think you're -- Your Honor, I believe

7    that there will be certain data that will be easy to either

8    segregate as privileged or non-privileged, but then I do

9    believe that there will be a volume of documents where there

10   is going to have to be some back and forth.  There may be

11   able -- they may be able to reach agreements with defense

12   counsel regarding certain documents, but there may -- there

13   may be other more complicated issues that take longer to

14   resolve, but we believe that as of Friday a few days to kind

15   of process what those answers are that we should be able to

16   set a schedule for further -- further resolution of the

17   privilege issues.

18         THE COURT:  So I'm basically pushing you on your

19   last paragraph in the letter which is, "Once it" -- and that's

20   meaning the Government -- "has the information described

21   above, the Government will be prepared to promptly inform the

22   Court whether any legal or factual issues" -- sorry -- "any

23   legal or factual disputes exist with regard to claim

24   privileges and to propose a briefing schedule to resolve any

25   remaining issues."  Do you have a sense of what "promptly"

9

1    means in that context?

2            MS. PENZA:   So I think we should be able to update

3    the Court by late next week, Your Honor.

4            THE COURT:   Okay.  All right.  Defendants' counsel,

5    anyone in particular.

6            MR. AGNIFILO:  I mean, I agree with everything my

7    colleague from the Government said.  They're giving us a lot

8    of discovery.  I know from our perspective we've been having

9    pretty steady contact with the firewall team, you know, and I

10   think we've been very productive and I think we've been trying

11   to be reasonable and I think that they view us as being

12   reasonable in terms of our privilege decisions.  And so I

13   think we've been making a lot of progress.  And we think we

14   can -- you know, we can finalize this by Friday.

15           THE COURT:   Your response by Friday?

16           MR. AGNIFILO:  Yeah.

17           THE COURT:   And then your briefing schedule by the

18   following week?

19           MR. AGNIFILO:  I mean, I'm not -- what I'd rather if

20   it's possible just to see where the disagreements are -- you

21   know, see where we are on Friday before we set a briefing

22   schedule.  I don't know if that's -- if the Court would be

23   amenable to that.

24           THE COURT:   If you reduce the amount of work there

25   is --

10

1          MR. AGNIFILO:  Right.

2          THE COURT:  -- I'm amenable.  I mean, it's a little

3    bit a self-serving question because --

4          MR. AGNIFILO:  Yeah.

5          THE COURT:  -- I'm going to have to deal with this,

6    so I'd like to know what we're looking at.

7          MR. AGNIFILO:  We've been paring it down.  I mean,

8    you know, and we've been sort of not trying to make issues

9    where there don't have to be issues.  I mean, you know, if

10   there are issues of sort of agency when there's a third party

11   in the mix, who would not be able to where, you know, we

12   haven't been claiming privilege over those things.  So I think

13   that we've been trying to, you know, make it -- make it

14   streamlined and make it as easy as possible.  So I'm hopeful

15   that we can continue to do that.

16         THE COURT:  All right.  Do you agree about the

17   stipulation resolving the motion?

18         MR. AGNIFILO:  So that's not my client's motion I

19   believe.  I think that's Nancy Salzman's issue --

20         THE COURT:  Okay.

21         MR. AGNIFILO:  -- if I have that right, so I

22   don't -- I would let -- their counsel is here.

23         THE COURT:  All right.

24         MR. AGNIFILO:  They can talk to that.

25         THE COURT:  So you don't have a view?  Okay.

11

1          MR. AGNIFILO:  I don't.

2          THE COURT:  And any discovery issues for you on the

3    increasing production waiting quickly to cross the 100,000-

4    page threshold?

5          MR. AGNIFILO:  Oh, it's -- I can't even imagine how

6    much it is.  It's --

7          THE COURT:  Is it 96,000?  Was that the number?

8          MS. PENZA:  No.  We have --

9          THE COURT:  It's all right.  It's just --

10         MS. PENZA:  That would have the last -- that's over

11   100,000, Your Honor.

12         THE COURT:  All right.  All right.  So any issues

13   for your client?

14         MR. AGNIFILO:  Nothing else.

15         THE COURT:  Nothing.

16         MR. MCGOVERN:  On behalf of Ms. Mack, we have no

17   issues either on the discovery production.  We've reviewed the

18   Government's chart and are comfortable with the pace of

19   discovery and are aware of the remaining deadlines and are

20   comfortable with where we are against that.

21         And on the privilege issue we've not lodged any

22   privileges, so it's not -- there's no issue with us.

23         THE COURT:  Let me just go back to the Government

24   for one second.

25         There -- where are the devices that were sent to the

12

1   FBI and I think as you've described it in the previous

2   conferences you just sort of end up in the queue?  Is there

3   any update on whether you're making it to the top of the

4   queue?

5          MS. PENZA:  No update, Your Honor.

6          THE COURT:  Okay.  All right.  Counsel on the back

7   row.  Concerns about discovery?

8          MR. DIAZ:  Right.

9          THE COURT:  Any thoughts about privilege?

10         MR. DIAZ:  No issues -- no present issues with

11  discovery.  We don't have an issue in terms of the privilege

12  as to Lauren Salzman.

13         THE COURT:  Okay.

14         MR. SOLOWAY:  Hello, Judge.  We -- I represent Nancy

15  Salzman.  We did enter into a stipulation with the Government

16  that resolved the issues in a motion that they had filed.  I'm

17  not sure why the motion is not closed.

18         THE COURT:  It may just be administrative on our

19  end.  I want to make -- because they're --

20         MR. SOLOWAY:  Right.

21         THE COURT:  -- you know, sort of dealt with in two

22  different courtrooms and make sure that everybody is on board

23  that the stipulation resolved the motion.

24         MR. SOLOWAY:  Yeah, I don't think there is any

25  issues outstanding.

13

1              THE COURT:  Okay.  Any other issues, any issue?

2              MS. CASSIDY:  Your Honor, on behalf of

3    Ms. Bronfman --

4              THE COURT:  Um-hum.

5              MS. CASSIDY:  -- I mean, we are the party with the

6    largest number of privilege documents that hit upon the search

7    terms and so we've been dealing with the firewall attorney on

8    trying to resolve those.  And as Mr. Agnifilo said, I mean,

9    where there have been issues that have been raised we've, you

10   know, been trying to work through them with the privilege

11   review team.

12             I do want to highlight for Your Honor that while

13   we've been trying to work through the privilege issues on this

14   batch of documents, the Government has just --

15             THE COURT:  "This batch" meaning --

16             MS. CASSIDY:  This -- this --

17             THE COURT:  -- the current 96,000 plus or what are

18   we talking about?

19             MS. CASSIDY:  -- current -- the current 16,000

20   privileged documents that hit on privileged terms in

21   Ms. Bronfman's email alone in the time period that was

22   captured under the previous search warrant, you know, we've

23   now learned that the Government has executed a search warrant

24   for additional emails.  The Government has told me that they

25   haven't yet received that data so they don't know what the

14

1  amount is and I don't yet know what the date range is.  So

2  that could change substantially the number of privilege

3  documents that we're talking about.

4        And if we're going to brief privilege issues, you

5  know, I would think that the Court might want to handle it all

6  at once, but we just don't yet know what the scope of the

7  privilege issues will be with respect to that new set of email

8  data.

9        THE COURT:  I don't have the search warrant.  So are

10 they just different in time or what's the --

11       MS. PENZA:  Your Honor, the search warrants are

12 still --

13       THE COURT:  -- change?

14       MS. PENZA:  -- under seal.

15       THE COURT:  Okay.

16       MS. PENZA:  But we have disclosed that there are --

17 there will be -- we expect there to be additional time -- an

18 additional time period.  The Government -- our firewall team

19 will be happy to have like any preliminary discussions with

20 defense counsel about what other types of privilege issues

21 might come up.  However, from my own knowledge of the case I

22 would expect that a lot of the privilege issues to the extent

23 they existed for the time period we already have the search

24 warrant on will be the same type of privilege issues that

25 we'll be dealing with for the other -- any other dates.

1          So while there may be some additional issues or one-

2     off issues, I do believe that continuing to try to resolve the

3     issues in the 16,000 documents will get us very far hopefully

4     on the other types of documents.

5          THE COURT:  Okay.  So to your point would you like

6     to deal with it all together, of course, but I mean, I'm even

7     more in the dark than all of you are as to what these

8     particular issues are.  But to the extent there can be some

9     principals decided --

10          MS. CASSIDY:  Right.  I mean, I agree with what

11     Ms. Penza said about trying to work through the issues on

12     these 16,000.  I guess my point was more towards if we're

13     setting a briefing schedule do we -- are we going to do it now

14     or are we going to wait until the fill scope of, you know,

15     privileged emails as it's been -- at least the parties have

16     had a chance to discuss.

17          THE COURT:  I think it somewhat depends on the time

18     line.  The dates that we do seem to know is that defendant's

19     counsel will get back to the Government by the end of the week

20     and then the Government can apply whatever the facts are that

21     are provided there and then you all can have a conversation

22     about what the outstanding issues are.  You know, were the

23     production to come in tomorrow in time to look at and run the

24     searches I guess we could collapse everything together, but

25     since you don't know, right, when no one here seems to know

16

1  when that production is going to happen I don't know if it's

2  practical to wait given all of your other demands in terms of

3  your time.  I'm happy to be corrected or informed otherwise,

4  but that's the way it seems.  Does anyone have a different

5  view?

6          MS. PENZA:  I believe that there will be certain

7  attorneys and certain topics that can be resolved and that

8  some -- that may impact other information we get.  It may not,

9  but I think we should see.  I think we should see how the

10  discussions go this week.  And if there are discussions that

11  Ms. Cassidy and other defense -- or other defense counsel want

12  to have about other issues they anticipate where if they're --

13  if we're talking about a certain attorney now and they think,

14  well, you know, Ms. Bronfman talked to that attorney five

15  years ago about different topics and it may not make sense to

16  deal with this right now, they're going to get other emails,

17  they can have that conversation.  But I think in the abstract

18  make a decision that we should wait, not wait doesn't make too

19  much sense.  I think we should kind of narrow it with the

20  understanding that the Government has said we are anticipating

21  additional data from other time periods.  If there are

22  specific people or specific topics that it doesn't make sense

23  to deal with right this second, we can have that -- they can

24  have that conversation with our firewall team.  But I think a

25  lot of progress can be made based on where we are now.  And I

1   think the same type of topics are going to be recurring.

2           THE COURT:  Right.  It just seems to me that given

3   your trial and motion schedule the dates with the district

4   judge waiting too long isn't going to help anybody.  So I --

5   in general, yes, if you can do everything together that seems

6   to be the more expeditious way of handling things, right?

7   Everybody is focused and thinking about the issues, but just

8   given the uncertainty I don't know if we can wait.  So it

9   seems like it's a moving target, but that's my initial

10  reaction is unless the information that's responsive to the

11  second set or round of search warrants come in soon but, yes,

12  it will be sort of a divided privilege process -- decision-

13  making process with regard to privilege issues.  All right.

14          I have you all here.  Anybody have any issues?

15  You're on a fairly tight time line to get this case ready for

16  trial and deal with all those preliminary issues, so --

17          MR. AGNIFILO:  Well, Judge --

18          THE COURT:  Yeah.

19          MR. AGNIFILO:  If I could just make one observation

20  or question for the Court maybe to direct to the Government,

21  I'm just wondering whether the Government has a belief based

22  on the new place that we find ourselves in that's reflected in

23  this November 2nd letter as to whether any of the new

24  information that's going to be generated by the new searches

25  or whether the potential superseding indictment that the

18

1  Government continues to talk about is going to affect anything

2  in relation to the discovery schedule that exists such as it

3  is now or the trial schedule.  Because you're -- you know,

4  we're operating here under a belief that we have a fixed

5  schedule and Your Honor is trying to queue to that schedule.

6  And to the extent that the Government has an opinion because

7  they're the ones with the information, we don't know what the

8  new search warrants say.  We don't know what the new probable

9  cause consists of to generate new searches and the Government

10  does.  So I would just ask the Court to inquire of the

11  Government along those lines and see if we can have an answer.

12          THE COURT:  So you're taking Ms. Necheles' place in

13  trying to push for the deadline.  To the extent you can answer

14  or willing to answer the question it would be helpful for

15  everybody with regard to their planning.  There's definitely

16  two questions in there: (1) given the production that you

17  anticipate what do you think it may do to discovery; and (2)

18  to other deadlines that are further along.

19          MS. PENZA:  Your Honor, I believe the Government has

20  been more open than we often are in these cases.  We were

21  asked twice by Judge Garaufis and we said we expect a

22  superseding indictment at some point.  That being said, based

23  on where we are now we don't anticipate that discovery that we

24  see as continuing from, for example, the additional search

25  warrants that were done on the email -- the email accounts for

1  Keith Raniere and Clare Bronfman as being reasons to extend

2  out the schedule.  We believe that those productions in

3  comparison to the many terabytes of data that we have now

4  produced in which the defendants now have time to go through

5  additional data that is produced down the line from those --

6  from those types of searches will pale in comparison to the

7  volume of data that has been produced at this point.

8          So the Government is not viewing those types of

9  searches as something that would extend the deadlines on

10 our -- not deadlines, but dates on our -- in our view.

11         THE COURT:  Okay.  So are you declining to answer

12 the question about the superseding indictment?

13         MS. PENZA:  Yes.

14         THE COURT:  Okay.  Just to be clear, you know.  We

15 asked.  You don't have an answer.  It's totally -- it's up to

16 the Government to --

17         MR. AGNIFILO:  Thank you, Your Honor.

18         MS. PENZA:  And --

19         THE COURT:  -- to deal with that question as they

20 will.

21         MS. CASSIDY:  And just to --

22         THE COURT:  Yes.

23         MS. CASSIDY:  -- in that vein, Your Honor.

24         THE COURT:  Um-hum.

25         MS. CASSIDY:  To be clear, that means that the

20

1  results of the additional search warrants, this new discovery

2  that is, you know, coming as a result of the additional search

3  warrants will not be produced.  The Government does not intend

4  to produce that by December 7th.

5          THE COURT:  I think you don't know the answer yes,

6  right?

7          MS. PENZA:  That's correct, Your Honor.  Thank you.

8          THE COURT:  I mean -- yeah, if it comes in tomorrow

9  and it's --

10         MS. PENZA:  It will depend on our review.

11         THE COURT:  -- small -- doesn't sound like it, but

12  they could turn it around fairly quickly and I think it

13  depends on how it falls in any of these other concerns we've

14  talked about over these various conferences.  It seems like a

15  great unknown at the moment.

16         That being said, to the extent the information does

17  come into the Government, you know, as much as you can turn it

18  around or at lest give some overarching description of it to

19  counsel that would be appreciated because I think it would

20  help everybody with their preparation plans.

21         MS. CASSIDY:  Your Honor --

22         THE COURT:  Yes.

23         MS. CASSIDY:  Sorry.  I -- and I just may be

24  confused about the colloquy just now, but do I understand the

25  Government to represent -- I know I'm addressing you, but --

21

1          THE COURT:  That's okay.  You can ask the question.

2    Go ahead.

3          MS. CASSIDY:  I know I'm not supposed to talk to the

4    other party in court, but the Government to represent that

5    other than material that's still forthcoming in response to

6    surfboards they have produced were they considered to be all

7    of the Rule 16 or is there additional Rule 16 discovery in its

8    possession that is still forthcoming by December 7th?

9          MS. PENZA:  There's still additional discovery.

10          THE COURT:  Still.

11          MS. PENZA:  By December 7th.

12          THE COURT:  Yeah.

13          MS. CASSIDY:  Okay.  And so that's one universe.

14    Then there's the yet-to-be acquired discovery.  Okay.

15          THE COURT:  All right.  Anybody have any other

16    issues?

17          MS. CASSIDY:  Does the discovery to be produced by

18    December 7th include the results of the searches on the

19    devices that have been produced in full to all defendants?

20    The devices have been produced in full to us, the devices that

21    are the subject of the stipulation that Your Honor was

22    mentioning.  The Government is still going to do the searches

23    to identify items responsive to the warrants.  And my

24    understanding is going to be producing those, so I'm just

25    inquiring about the timing of that production.

22

1          THE COURT:  So you're identifying the responsive --

2     potentially subset of data on those devices that the

3     Government believes is responsive to the search warrants?

4          MS. CASSIDY:  Correct.

5          THE COURT:  I don't know where that is on your list

6     of priorities.  Any idea?

7          MS. PENZA:  Your Honor, we expect that there will be

8     rolling productions of Bates-stamped documents from devices,

9     but those devices are not devices for which, for example,

10    Ms. Bronfman has standing to challenge.  There's a lot --

11    right now -- the issue for discovery is that it's all been

12    made accessible to defendants in the same format that it's

13    accessible to us.

14         So if the question is, what we -- what is responsive

15    from that, that will -- we're not committing to that by

16    December 7th.  We -- and our searches are ongoing.  We've

17    written about this to the Court already in terms of our

18    ongoing searches.  So we are not committing to that by

19    December 7th, but we anticipate that there will be Bates-

20    stamped productions from devices by December 7th, but that

21    there will be additional ones after December 7th.

22         THE COURT:  All right.

23         MS. PENZA:  But defense counsel has everything.

24         THE COURT:  I know but, you know, this is --

25         MR. SOLOWAY:  Defense counsel what?  I'm sorry.

23

1          MS. PENZA:  That's a different --

2          THE COURT:  Everything.

3          MS. PENZA:  Everything.

4          THE COURT:  You have --

5          MS. PENZA:  From the devices.

6          THE COURT:  -- Ms. Salman's devices.  You know, this

7    is the same conversation we had a month ago or so which is

8    Government is on notice that you have to, you know, work hard,

9    do your best, do other expectations around executing the

10   search warrants in a timely fashion and the defense counsel

11   can raise issues if they believe it's not timely produced.

12          That being said, as you've talked with me and you've

13   talked with the district judge as I've seen from the

14   transcripts, you know, it's not a hard deadline, so we have to

15   see how this evolves and comes out.

16          MS. PENZA:  But, Your Honor, December 7th even -- I

17   know we had the debate over the word and whether it was going

18   to be a deadline --

19          THE COURT:  Yeah, deadline or date, as you said

20   earlier.

21          MS. PENZA:  -- or not and we --

22          THE COURT:  Yes?

23          MS. PENZA:  And it was agreed that it was not a

24   deadline.  But even when we were talking about December 7th,

25   that was about production of discovery, not about completion

24

1  of searches.  That is a very different topic.

2          THE COURT:  I don't think defense counsel agrees

3  with you, so --

4          MS. PENZA:  Well, then --

5          THE COURT:  I mean, you know, we'll have to see

6  where we are.

7          MS. PENZA:  But then there has to be briefing.

8          THE COURT:  We're not at December 7th.  I mean, I

9  don't want to speak for you.

10          MR. SOLOWAY:  No.  And we --

11          THE COURT:  And the big conversation, if I recall it

12  correctly, was -- is proposed analysis about prejudice and to

13  your point there's no prejudice if they have it.

14          MS. PENZA:  That is our point, Your Honor.

15          THE COURT:  I'm not saying defense counsel agree.

16  I'm not making any decisions.  I'm just trying to identify

17  issues that are coming down the pike.

18          MR. AGNIFILO:  I think the problem is I think there

19  are a few -- a few issues are all sort of occupying the same

20  space at the same time and I think some of the issues are the

21  Government's continuing to investigate which is their right.

22          At a certain point, you know, there's also district

23  court schedules and there's sort of a fundamental fairness I

24  think that creates these sorts of things.  And I think what

25  the Government is trying to do, and I understand from their

25

1    respect to what they're trying to do it, they want to keep all

2    their options open for as long as they can, so they want to

3    give us discovery.  And whether it's a deadline or whether

4    it's a date, they want to keep doing searches after that

5    either with an eye toward developing evidence for the trial or

6    developing evidence for a potential superseding indictment.

7            The problem from our perspective is we're all -- we

8    all have other judges waiting in the wings.  Judge Garaufis's

9    case, as far as I'm concerned and as far as he's concerned, is

10   going first but it's not only.  And so we're anxious to try

11   and start the trial and know where we stand with all of these

12   dates.

13           The Government -- Your Honor asked the perfect

14   question and the Government gave an answer that it has the

15   right to give, which is we're not talking about superseding

16   indictments and that's fine.

17           So as a result I think try as we might to give

18   definite contours to all of this, there's a certain part of it

19   that really doesn't have any contour because the Government is

20   doing an investigation that only it knows the contours of and

21   we're all sort of waiting to see what comes out of that.

22           So from our perspective we would love the December

23   date to be as much of a deadline as possible and that is argue

24   and then if the Government -- you know, our preference would

25   be that they don't do searches after that because we have a

26

1   trial soon thereafter.

2          Now, I don't know if there's any mechanism to

3   enforce that.  I don't know that there is when it comes to a

4   superseding indictment.  If there was, we'd be asking for it.

5          THE COURT:  All right.  So the superseding

6   indictment I -- there's really nothing for me to weigh on and

7   this is exactly what you said.  And the Government, your

8   position is really the conversation we've been having since

9   you first started talking to me and there's desire

10  understandably on the defendants' side to nail down when is

11  the Government's effort to find new information shut down.

12  And as difficult as it for your side to deal with it, it's a

13  question -- it's a balancing question as we've talked about.

14  And we're not there yet and we don't know what the final -- or

15  intermediate final -- the volume will be December 7th or how

16  it's looking going forward.

17         So you've all clearly stated the position and I've

18  said now several times, you know, the Government is expected

19  to work as quickly as it can, as thoroughly as it can, and

20  give you all a fair opportunity to be prepared for the trial

21  and all the motion practice that's going to go on before that.

22         That being said, there are, as the Government has

23  discussed in other conferences, significant logistical and

24  technical challenges to the production.  So if -- they can do

25  what they can do and you can make the motions to say this has

27

1    to stop.  That's where we are.  Not really any further except

2    that you have gotten a lot of documents since we first started

3    talking about this, so everyone is on notice of the process

4    and you can make your motions accordingly.

5         To the extent we can anticipate them and know

6    they're coming, that's obviously helpful for everybody in

7    terms of planning, but, you know, they're -- but there are

8    conflicting interests and sometimes they are converging,

9    there's a confluence and sometimes they're diverging in terms

10   of your interests and ability to coordinate all this.  Look,

11   I'm not saying anything you don't know.  We've -- we just get

12   closer and closer and Government -- you know, I don't know

13   what your sense is of how, you know, thoroughly this is all

14   coming together and how you're going to be able to describe

15   your production and on the defendants' side what your

16   prejudice is.  Obviously I just touched on one point which is

17   this -- the resolution of -- or mooting out really of the

18   motion by the agreement, but I summarized the Government's

19   position on that issue.  There's no prejudice.  You already

20   know everything.  You could obviously disagree.

21        I don't know if there's much to be said except to

22   keep making this record that everybody is on notice that there

23   are these conflicting concerns and pressure on the Government

24   to keep moving expeditiously.  I don't know if anybody else

25   wants to say anything about some particular challenge your

28

1   client is having or you're having because of this situation.

2        MS. CASSIDY:  I would just note it's been a helpful

3   process, Your Honor, before coming to this court, so thank you

4   for the work the Court has put in.

5        THE COURT:  I think you're all working a lot harder

6   than I am.  I'm trying to avert my need to have to make these

7   decisions, so I appreciate you all trying to work things out.

8        All right.  So in terms of time line, we're still

9   working with the date of -- in December and then you think

10  next week is -- you think by the 13th you could have a letter

11  with regard to the privilege or do you think the week after?

12  I mean, it really -- it's -- to state the super obvious, if

13  you can work it out that's better for everybody because you

14  all have, you know, a handle on each of your client's separate

15  interests, but --

16       MR. SOLOWAY:  Your Honor, Your Honor --

17       THE COURT:  Who is -- yeah.

18       MR. SOLOWAY:  Yeah.  I would like to just make one

19  other point as quickly as I can.  Again, for Nancy Salzman.

20  And I am -- have been sitting here trying to think of ways not

21  to have to say this because we seem to be approaching the

22  conclusion of the conference and that's --

23       THE COURT:  Oh, we've got time.

24       MR. SOLOWAY:  Yeah.

25       THE COURT:  I'm staying up tonight to see what

29

1  happens.

2         MR. SOLOWAY:  Yeah.  There's time tonight, that's

3  true.

4         THE COURT:  So we've got time.

5         MR. SOLOWAY:  But -- and there are, as you've

6  indicated, Your Honor, technical challenges and there's also

7  lots of thorny legal issues underlying the privilege issues

8  and also the issues relating to the Government's motion and

9  the stipulation that resolved it.

10        But in light of the Government's what I would

11 characterize as non-answer to Clare Bronfman's attorney on the

12 question of searches for data among the Nancy Salzman devices,

13 that is within the scope of the search warrant.

14        Okay.  I represent Nancy Salzman and we entered into

15 the stipulation and order and it is our expectation that the

16 Government will continue to make the appropriate searches to

17 determine that data that's on those devices that's within the

18 four corners of the search warrant, that which they had

19 probable cause to seize.

20        And while we agree pursuant to the stipulation and

21 order that what we're characterized as full forensic copies of

22 all of the material on those devices would be turned over to

23 all of the defense lawyers, part of that negotiation and

24 resulting order bound the Government to continue to do the

25 searches for that material that is within the search warrant

30

1   because there is a broader body of material that is in the

2   full forensic images, the full forensic copies that were

3   turned over.

4           And that material is not -- it's impermissible, you

5   know, for the Government to use that material unless they have

6   some basis and Your Honor is indicating that, you know,

7   everybody is -- you know, is making their record and making

8   their position and there are differences.  But I just want to

9   state that it's our -- that's our position on behalf of Nancy

10  Salzman that those searches notwithstanding the agreement to

11  turn this all over now so that we could all move forward, that

12  was what we did it.  We could all move forward, try to comply

13  with these dates and try to have a trial on the schedule and

14  that's where we are from Nancy Salzman's point of view.

15          THE COURT:  Because I understand you're saying

16  nothing about the stipulation should be read by the Government

17  or anyone else to take off the pressure to get the search

18  warrant permitted, searches done as expeditiously as possible.

19          MR. SOLOWAY:  Well, the --

20          THE COURT:  Is that --

21          MR. SOLOWAY:  -- stipulation reads, Your Honor,

22  that -- in one clause that the Government has -- and it's on

23  the record.  I mean, it's on the docket.

24          THE COURT:  Um-hum.

25          MR. SOLOWAY:  The Government has identified and will

1  continue to identify material on the Oregon Trail devices that

2  is responsive to the search warrants authorizing the seizure

3  of the Oregon Trail devices and will produce the materials so

4  identified for counsel for the defendants.  We interpret that

5  language to mean that that's what the Government will do.

6           THE COURT:  Okay.  I don't know that there's a

7  disagreement.  Is there a disagreement?

8           MS. PENZA:  No, Your Honor.  But just to put on the

9  record that additional search warrants on those devices were

10 obtained very recently.  Should Mr. Soloway wish to make a

11 motion the stipulation order makes very clear that he does not

12 waive any ability to make motions challenging the Government's

13 search or seizure as to those devices.

14          MR. SOLOWAY:  Yeah.  I'm assuming that the scope of

15 the warrant has been expanded as to those devices by virtue of

16 the search warrants that we haven't seen.  I'm not talking

17 about that.

18          This was on the basis of the search warrant that

19 existed at the time we entered into the stipulation.

20 Obviously the Government unless there's a valid challenge to

21 the probable cause in the new warrants, which there may or may

22 not be, I don't know, but we're just talking about this

23 stipulation that was prepared in advance of the Government

24 notifying us that they had obtained new search warrants.  Yes,

25 of course.  The breadth of the material is now expanded by

32

1  whatever the Government put in the new search warrants and

2  whatever new probable cause they articulated.

3          THE COURT:  Okay.  So just so I'm clear, is your

4  point what I said earlier, which is no one should believe that

5  you having entered into this stipulation takes the pressure

6  off the Government to timely, expeditiously, appropriately

7  execute those search warrants on the devices?  Just because

8  they were the subject of the stipulation doesn't change that

9  obligation and --

10         MR. SOLOWAY:  Yes, Your Honor.

11         THE COURT:  -- are building towards when is this

12 going to stop, at least based on the first round of search

13 warrants?

14         MR. SOLOWAY:  Yes, Your Honor.  Thank you for

15 stating that.

16         THE COURT:  All right.

17         MR. SOLOWAY:  Yes, I 100 percent agree with that.

18         THE COURT:  You want to say anything?

19         MS. CASSIDY:  Your Honor, we don't disagree.

20         THE COURT:  All right.  It's the second thing you

21 all agree on.  All right.  Any issues that it would be helpful

22 to raise, put on the record, you anticipate coming up in the

23 next couple of weeks other than this privilege point?  And I'm

24 just going to circle back to when can I expect an update, sort

25 of have the Government thinking the end of next week and then

33

1  counsel suggesting maybe it should be a little later if the

2  privilege discussions could -- are moving along in a

3  productive way.  Thoughts?

4        MS. PENZA:  Your Honor, if the submission were a

5  letter to the Court identifying areas of potential dispute I

6  think that should be done earlier than later.  I think it

7  makes sense to simply highlight for the courts where there are

8  potential issues -- complicated legal issues.  We've got

9  third-party waiver issues, joint defense agreements, those

10 types of issues that are not date specific and not document

11 specific.

12       THE COURT:  Okay.  Let me just give counsel a chance

13 to talk with his colleague.

14       MR. AGNIFILO:  I think on our end we're providing

15 the letter to firewall --

16       THE COURT:  Friday, right?

17       MR. AGNIFILO:  -- AUSA on Friday.

18       THE COURT:  Um-hum.

19       MR. AGNIFILO:  So on Friday the firewall AUSA will

20 know the issues.

21       THE COURT:  And the point is maybe you all can talk.

22       MR. AGNIFILO:  Right.

23       THE COURT:  And the questions is, how much time do

24 you need to talk before you know that some things -- or at

25 least if you can't resolve it or at least there's a subset of

34

1    issues that just are not going to be resolved by agreement --

2         MR. AGNIFILO:  It makes sense for you to give us a

3    week, I mean, because I think we can probably resolve the vast

4    majority of them.

5         THE COURT:  So a week from Friday or what?  Okay.

6         MR. AGNIFILO:  Right, a week from Friday.

7         THE COURT:  Okay.  So then I think you're on the

8    same page, right?

9         MR. AGNIFILO:  Right.

10        THE COURT:  We are looking at the 16th, right?

11        MR. AGNIFILO:  Yes.

12        MS. CASSIDY:  Your Honor, can I suggest the 19th

13   just because the defense motions are due on Friday, the 16th?

14        MR. AGNIFILO:  That's a great point.

15        (Laughter)

16        That's the best point of the day.

17        THE COURT:  Yeah.  Government, the 19th is fine?

18        MS. PENZA:  The 19th is fine.

19        THE COURT:  All right.  It really is your colleague,

20   so -- right?  Your firewall colleague who's going to be having

21   these conversations, so --

22        MS. PENZA:  Yes, on the substantive matters, yes,

23   that's true, Your Honor.

24        THE COURT:  All right.  So if you can just update

25   that colleague about this date.  Okay.  Anything else?

35

1        MS. PENZA:  Not from the Government.  Thank you,

2  Your Honor.

3            THE COURT:  All right.  Thanks.

4            MS. PENZA:  Thank you, Your Honor.

5            THE COURT:  Okay.

6            MS. PENZA:  Thank you very much.

7  (Proceedings concluded at 4:48 p.m.)

8                    *  *  *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

36

1          I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4    _____

5

6                              Ruth Ann Hager, C.E.T.**D-641

7    Dated:   November 7, 2018

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25