

U.S. Department of Justice

United States Attorney
Eastern District of New York

MKM:TH/MKP
F. #2017R01840

271 Cadman Plaza East
Brooklyn, New York 11201

November 27, 2018

By ECF

The Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Keith Raniere, et al.
               Criminal Docket No. 18-204 (S-1) (NGG) (VMS)

Dear Judge Scanlon:

       The government respectfully submits this letter to advise the Court, in accordance with the Court's order of November 6, 2018, of points that remain in dispute with regard to certain issues relating to the defendants Clare Bronfman, Nancy Salzman and Keith Raniere's assertions of attorney-client privilege. (See Docket Entry No. 189.)

       For the past several months, the government has been in communication with counsel for these defendants, and later, with counsel for Nxivm, to attempt to understand the applicable privileges in order to conduct its privilege review. The government has been attempting to understand which attorneys represented the defendants, which attorneys represented Nxivm or any other entities, whether any common interest agreements were entered into between Nxivm and the defendants, and if so, the time period and scope of representations relevant to these asserted privileges.

       At present, however, the government has received inconsistent information from the relevant parties. As one example, Clare Bronfman has identified Jonathan Ware, Esq., as an attorney who represented Nxivm and with whom she claims she had privileged communications in her capacity as a representative for Nxivm. However, counsel for Nxivm, Michael J. Sullivan, Esq., has informed the government that the privilege-holder of communications between Clare Bronfman and Jonathan Ware, Esq. over Nxivm's server is Clare Bronfman in her personal capacity, and that Mr. Ware did not represent Nxivm. The information provided by counsel for Nxivm about any privileges applying to the records on

Nxivm servers was inconsistent with the representations of Ms. Bronfman in other ways as well. In addition, counsel for the defendants Clare Bronfman and Keith Raniere have both asserted that the defendants entered into joint defense agreements with Nxivm at various times. However, Mr. Sullivan has indicated that he is not presently aware of any such agreements with Ms. Bronfman or Mr. Raniere.

In response to initial requests by the government, counsel for Keith Raniere, Clare Bronfman, and Nancy Salzman provided lists of attorneys and law firms with whom the defendants represented to the undersigned prosecutors (the "prosecution team") they had privileged communications. However, in response to requests for additional information and clarification regarding the scope of these communications, counsel for these defendants have objected to the provision to the prosecution team of non-privileged information regarding these claimed privileges.[1] In particular, counsel has recently provided updated lists and charts of attorneys and law firms with whom they assert they had privileged communications (the "Lists and Charts") to the government privilege review team (the "firewall team"), but has objected to the provision of the Lists and Charts to the prosecution team, which is in a better position to identify any inconsistencies as to claims of privilege, like those referenced above.

The government has engaged the firewall team to review and to resolve privilege disputes that depend on the content of potentially privileged documents. Legal arguments regarding whether a privilege exists, the scope of the privilege and whether a privilege has been waived that do not depend on the content of the communication will be litigated by the prosecution team, as is the practice in this District. See, e.g., United States v. Juan Angel Napout, 15-CR-252 (PKC) (RML), Transcript dated Oct. 25, 2016 (government represented by its prosecution team in hearing before Magistrate Judge Robert M. Levy on questions of the existence, scope and waiver of purported attorney-client privileges, and a claimed common-interest agreement). As indicated above, there appear to be several legal issues relating to privilege that do not require reference to specific documents, including the identity of a particular lawyer's client.

Defense counsel has indicated that it would prefer that the firewall team proceed with its privilege review and for the parties to resolve any disputed issues as to privilege on a document-by-document basis during or following that review. This approach should be rejected. Conducting a privilege review prior to determining which privileges

---

[1] Courts in this Circuit have consistently held that the fact of an attorney-client relationship is not privileged. See In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 247 (2d Cir. 1986); Perez v. Beres Bar & Pub, Inc., No. 16-CV-1729 (ILG), 2016 WL 8711057, at *2 (E.D.N.Y. Nov. 4, 2016); Torres v. Toback, Bernstein & Reiss LLP, 278 F.R.D. 321, 322 (E.D.N.Y. 2012) (NGG) (VPP) ("[A] long and unbroken line of cases in this Circuit have established in the absence of special circumstances client identity and fee arrangements do not fall within the attorney-client privilege[.]" (internal quotation marks omitted)).

exist—or even who a particular lawyer represented—would be wholly impractical, not to mention highly inefficient and likely to cause significant delay in the case.[2]  By contrast, the government's firewall team can proceed expeditiously with its review only after it has a clear understanding of the existence, validity and scope of the asserted privileges.  In addition, clarity at the outset is likely to reduce the number of disputes as to particular documents and the need for involvement of the Court.

For these reasons, the government respectfully requests, as an initial matter, that the Court direct the defendants to promptly provide the Lists and Charts to the prosecution team.  If and to the extent the defendants claim that any information on the Lists and Charts is privileged, the government requests that the defendants be directed to provide redacted Lists and Charts to the prosecution team and to present to the Court in camera the content of the redactions for determination by the Court whether such redacted material is in fact privileged.  See United States v. International Brotherhood of Teamsters, et al., 119 F.3d 210, 214 (2d Cir. 1997) ("The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it.") (citation omitted); In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." (internal citations and quotation marks omitted)).  After such information is provided to the prosecution team, the government will be in a position to identify any remaining issues on the existence, validity and scope of any claimed privileges.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/  
Moira Kim Penza
Tanya Hajjar
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of Court (NGG) (by ECF)
     Counsel of Record (by ECF)

---

[2] In addition, information regarding the identities of attorneys, their clients and any claimed common interest agreements that is not provided to the prosecution team may result in those communications not being properly identified and segregated for the firewall team's content review.