UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

UNITED STATES OF AMERICA,                    **TO BE FILED UNDER SEAL**[1]

-against-                                                        **ORDER**

KEITH RANIERE, also known as Vanguard,        18 Crim. 204 (NGG) (VMS)
CLARE BRONFMAN, ALLISON MACK,
KATHY RUSSELL, LAUREN SALZMAN,
and NANCY SALZMAN, also known as Perfect,

                          Defendants.

-------------------------------------------------------- x

**VERA M. SCANLON, United States Magistrate Judge:**

## I.    Preliminary Statement

This Order addresses one of the six categories of email communications that Defendant

Bronfman asserts are privileged and, as such, should not be turned over to the Government's

prosecution team, other Defendants and their counsel, or the public.  See Defendant Bronfman's

Privilege Motion ("Def. Mot."), ECF No. 363.  The communications at issue are the "Dr. Park

Dietz Documents," which include the following: (1) email communications between Attorney

Bob Crockett, Defendant Bronfman and Dr. Park Dietz,[2] and ███████████████████████

███████████████████████████████████████████████████    ████████

---

[1] This Order will initially be filed under seal.  By 4/8/2019, counsel are to submit a joint proposal
as to those portions that they believe should be redacted and remain sealed with copies only to
the Court, the privilege review team, Defendant Bronfman's counsel and Nxivm's counsel.  The
Court will consider the proposed redactions and file the Order publicly with appropriate
redactions if necessary.

[2] Index Nos. 1-148, 150-153.

████████████████.[3]  For the reasons set forth herein, the Court finds that the "Dr. Park Dietz Documents" over which Defendant Bronfman claims privilege are excepted from disclosure, with one exception, and shall not be produced to any other party, including the Government's trial team.  This Order presumes familiarity with the record in this case, and it only discusses those aspects of the case relevant to the herein motion.

## II.    Discussion

### A.  Preliminary Matters

As a preliminary matter, the Court questions whether the "Dr. Park Dietz Documents" fall within the scope of the search warrant as they do not appear to relate to any of the items to be seized as listed in the March 2018 and October 2018 warrants that were the subject of the Court's March 14, 2019 Report and Recommendation.  See ECF No. 425.  Notwithstanding the Court's concern, there are separate grounds on which to deny disclosure of the email communications.

It is necessary to address, at the outset, one of the Government's preliminary arguments prior to considering its position on privilege.  The Government argues that Nxivm is the privilege holder and because it appears to have suspended its operations, no privilege can be asserted by or on its behalf.  Gov't Opp'n at 5.  In support of its position that Nxivm is now defunct, the Government cites to the following statement taken from Nxivm's website: "It is with deep sadness that we inform you we are suspending all NXIVM/ESP enrollment, curriculum and events until further notice . . . While we are disappointed by the interruption of our operations, we believe it is warranted by the extraordinary circumstances facing the company at this time."  Id.  This language points to a suspension of operations, not a cessation of operations.  It also

---

[3] Index Nos. 154-160.

refers to "extraordinary" events, which is mostly likely a reference to this prosecution. It would be troubling if the Government's prosecution of a company's leadership as the source of a business's difficulties could then be used to find a waiver of the attorney-client or similar privileges.

There is no conclusive evidence offered to show that the corporation has ceased to exist. When the Court conducted a search for "Nxivm" on the New York State Department of State website, five business entities were located. One of those entities, Nxivm, LLC, has a process address in Clifton Park and is still active. Moreover, Nxivm is represented by counsel, Michael Sullivan, who has asserted privilege on his client's behalf in this litigation. See, e.g., ECF No. 382.

The Government further argues that Michael Sullivan refuses to identify the individuals who are asserting the privilege on behalf of Nxivm, and without that information, it is unclear whether the individuals doing so have the authority to assert the privilege on behalf of the organization. Id. The Government has not cited any case to show it is entitled to this relief. It is clear based on Defendant Bronfman's motion that she is asserting privilege on behalf of Nxivm in her capacity as an executive board member of the organization. See, e.g., Def. Mot. at 2 ("Crockett's communications with Bronfman, acting in her capacity as executive board member of NXIVM, and Dietz, hired by Crockett to assist in his litigation strategy, clearly fall within the attorney-client privilege and are protected as attorney work product as well."). Her position is consistent with Attorney Sullivan's invocation of privilege on behalf of his client, Nxivm.

**B. Category One**

With regard to category (1), Ms. Bronfman argues that Attorney Crockett's[4] communications with Defendant Bronfman, acting in her capacity as executive board member of Nxivm, and Dr. Dietz, hired by Mr. Crockett to assist in his litigation strategy, fall within the attorney-client privilege and are protected as attorney-work product. Def. Mot. at 2; see also Declaration of Robert D. Crockett ("Crockett Decl."), ECF No. 364, ¶ 3. ██ ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Ms. Oxenberg claimed that her daughter had been brainwashed into participating in DOS. Def. Mot. at 2. Dr. Park Dietz studied India for the purpose of determining whether she was "acting out of psychological compulsion, as was being reported in the media, or out of her own free will." Id.

### i. Work-Product Privilege And Federal Rule Criminal Procedure 16

"The work product privilege establishes a zone of privacy for an attorney's preparation to represent a client in anticipation of litigation." In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 160 (2d Cir. 2002) (citing Hickman v. Taylor, 329 U.S. 495, 510, 67 S. Ct. 385 (1947); United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)). In United States v. Nobles, 422 U.S. 225, 238-39, 95 S. Ct. 2160 (1975), the Supreme Court extended the privilege to materials "prepared by agents for the attorney as well as those prepared by the attorney himself," observing that "attorneys often must rely on the assistance of investigators and other

---

[4] Attorney Crockett provides the following in his Declaration: "I have represented NXIVM in various matters over many years, both while I was an attorney at Latham & Watkins and since starting my own firm. ██████████████████████████████████████

████████████████████████████████████████████████

agents in the compilation of materials in preparation for trial.  See United States v. Ghavami, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012) (quoting In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007)) ("Indeed, the work product doctrine protects more than the mental impressions and strategies of counsel: 'fact work product may encompass factual material, including the result of a factual investigation.'").

The Court turns to the statutory work-product exception set forth in Fed. R. Crim. P. 16, which governs the scope of the Government's and Defendant Bronfman's respective discovery obligations.  Of relevance to the instant motion are the express limitations on a defendant's production set forth in Rule 16(b)(2):

> (2) **Information Not Subject to Disclosure**. Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of:
>
> > (A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or
> > (B) a statement made to the defendant, or the defendant's attorney or agent, by:
> > > (i)    the defendant;
> > > (ii)   a government or defense witness; or
> > > (iii)  a prospective government or defense witness.

Fed. R. Crim. P. 16.  The aforementioned categories are excepted from the disclosure mandated by Rule 16(b)(1).

Rule 16's work-product exception offers broad protection from disclosure.  See United States v. Stewart, 287 F. Supp. 2d 461, 467 (S.D.N.Y. 2003) ("Federal Rule of Criminal Procedure 16(b), which governs pre-trial discovery in criminal cases, is even more protective than the civil rule . . . .").  Rule 16(b)(2)(A) includes protection of materials created in the course of an investigation.  See In re Grand Jury Subpoenas Dated October 22, 1991, & November 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992) (quoting Fed. R. Civ. P. 26(b)(3)) ("In a civil case,

materials prepared by a party's attorney in anticipation of litigation or for trial are not

discoverable except on a showing that the party seeking production has 'substantial need' for the

materials for preparation of its case and 'is unable without undue hardship to obtain the

substantial equivalent of the materials by other means.'  In a criminal case, except for scientific

or medical reports, documents made by a defendant's attorneys or their agents in connection with

the case are not discoverable.") (internal citations omitted).  Under Rule 16(b)(2), the term

"agent" includes investigators or consultants.  See Nobles, 422 U.S. at 235 n.8 (Rule 16 "[does]

not authorize pretrial discovery of the investigator's report."); see also United States v. Walker,

910 F. Supp. 861, 865 (N.D.N.Y. 1995) (directing nondisclosure of testimony that "comprehends

conclusions drawn in the course of an attorney-expert association undertaken to assist the

attorney in his preparation of trial strategy").

Rule 16(b)(2) excludes "scientific and medical reports" from the limitation on disclosure.

See United States v. Hatfield, No. 06-CR-0550 (JS), 2009 WL 3806300, at *2 (E.D.N.Y. Nov.

13, 2009) (quoting In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d

379, 383 (2d Cir. 2003)) ("[T]he work product doctrine is stricter in the context of a pending

criminal prosecution, where it preclud[es] discovery of documents made by a defendant's

attorney or the attorney's agents except with respect to scientific or medical reports.") (internal

quotation marks omitted); Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1,

1991, 959 F.2d 1158, 1166 (2d Cir. 1992) (citing Fed. R. Crim. P. 16(b)(2)) ("In a criminal case,

except for scientific or medical reports, documents made by a defendant's attorneys or their

agents in connection with the case are not discoverable.").  Pursuant to this rule, scientific results

that are not reduced to a formal scientific or medical report are not subject to disclosure.[5]  "At a minimum," materials covered by the work-product privilege "should not be discovered absent 'an adequate showing of substantial need for the document and an inability to obtain its contents elsewhere without undue hardship.'"  United States v. Arias, 373 F. Supp. 2d 311, 313 (S.D.N.Y. 2005) (citing Adlman, 134 F.3d at 1202-03).

Here, Dr. Dietz can appropriately be described as a consultative expert.  In her motion papers, Defendant Bronfman has not stated that she will use the materials at issue in the manner set forth in Fed. R. Crim. P. 16(b)(1).  The mandatory disclosure requirements of Rule 16(b)(1) are thus not triggered.  Even if Defendant Bronfman had advised that she intends to call Dr. Dietz at trial, disclosure would be limited by Rule 16(b)(2)(A) and (B), and the work-product privilege, in the manner set forth above.  Therefore, documents created by Defendant Bronfman, Attorney Crockett or Dr. Dietz in the course of the investigation of the case, other than reports, would not be subject to disclosure.  In addition, statements made by Defendant Bronfman to her attorney or Dr. Dietz, and any statement made by Dr. Dietz, as a prospective defense witness, to Defendant Bronfman or her counsel, are also exempted from disclosure.[6]

Curiously, Rule 16(b)(2)(B) does not expressly protect statements made by an attorney or agent to a defendant.  Such communications made by Attorney Crockett or Dr. Dietz to Defendant Bronfman would fall within the scope of Rule 16(b)(2)(A) and the attorney-client privilege.  The Government has failed to show a substantial need for the communications.

---

[5] Rule 16(b)(2) is an exemption from materials that would otherwise be subject to disclosure pursuant to Rule 16(b)(1).  As such, unless a defendant intends to utilize the scientific or medical report at trial, then those reports are not subject to disclosure.

[6] The Government notes in footnote five to its opposition that a number of communications were just between Defendant Bronfman and Dr. Dietz.  Gov't Opp'n at 6 n.5 (citing Index Nos. 71, 80-83, 151-53).  Under Rule 16(b)(2)(B), a defendant's attorney need not be included on the communication in order for the work-product exemption to apply.  See Rule 16(b)(2)(B).

This approach to expert discovery is consistent with Rule 26 of the Federal Rules of Civil Procedure, entitled "Trial Preparation: Experts," which protects facts and opinions of non-testifying, consulting experts from disclosure, except upon a showing of exceptional circumstances. Fed. R. Civ. P. 26(b)(4)(B). The Supreme Court observed, in <u>Nobles</u>, 422 U.S. at 238, that the work-product doctrine's "role in assuring the proper functioning of the criminal justice system is even more vital" than in the civil context. In <u>United States v. Walker</u>, 910 F. Supp. 861, 865 (N.D.N.Y. 1995), a criminal case, the court referenced a similar principle in its reasoning for precluding the Government from eliciting testimony from the defenses' consultative, non-testifying, expert. The court explained that "[a]bsent such an area of qualified privileged [sic] within which to prepare for trial a criminal defendants' preparation can only be crippled by the prospect of creating an unfavorable witness every time he attempts to obtain an unbiased assessment of the government's evidence by consulting an expert." <u>Id.</u>

### ii. The Public Disclosure Of The Report Did Not Waive Protection

The Government argues that the "Dietz documents" cannot be privileged because they were not prepared in anticipation of litigation, "but were prepared to rebut claims reported in the media that Nxivm and DOS were harmful to the psychological health of its members," Gov't Opp'n. at 10, and in view of this motivation, there was no intent to keep the communications confidential and the Dietz report was released to the media. <u>Id.</u> at 9-10. The Court disagrees. ■



Even if Dr. Dietz had been retained, in part, for the purpose of issuing a report to the media, "[m]aterials need not be prepared solely for a litigation purpose in order to merit protection under the work-product privilege." Strougo v. BEA Assocs., 199 F.R.D. 515, 521 (S.D.N.Y. 2001) (citing United States v. Adlman, 68 F.3d 1495, 1501-02 (2d Cir. 1995)).

Related to the aforementioned, in its Opposition, the Government relies, in part, on NXIVM Corp. v. O'Hara, 241 F.R.D. 109 (N.D.N.Y. 2007), a case in which the court observed that even though Joseph O'Hara, Nxivm's counsel, hired Sitrick, a public relations firm, the firm was really working on behalf of Nxivm's principals, and that Attorney O'Hara's involvement was a façade designed to "conceal[ ] all conversations and all actions under the cloak of an attorney-client privilege or work product." Id. at 140. With regard to work-product, the court held, in relevant part, that a report created by an investigative firm ("the Interfor Report") and provided to a public relations firm was not protected by the work product privilege because "delivering the Interfor Report to Sitrick was a deliberate, affirmative and selective strategic

decision to disclose this information for another benefit other than aiding the lawyer pitched in the battle of litigation." O'Hara, 241 F.R.D. at 142.

The Court finds there are important distinctions between the facts of O'Hara and those of the instant case that render the O'Hara holding distinguishable. At the outset, the Court notes that O'Hara is a civil case and, in civil cases "any nonprivileged matter that is relevant to any party's claim or defense" is discoverable. In criminal cases, however, Fed. R. Crim. P. 16 directs discovery, and, pursuant to that Rule, defendants generally need only disclose materials that they intend to use at trial. In O'Hara, the attorney who signed the retainer agreement with Sitrick stated that he had very limited contact with Sitrick, 241 F.R.D. at 140; there is no evidence that Sitrick consulted with any of Nxivm's lawyer, id. at 142; he was not privy to the on-going communications, id.; and he gave no direction or instruction to the firm. Id. There were even questions about whether the attorney himself was providing legal services or rather, "coordinating media, public relations, lobbying, and other non-legal services." Id. at 130. Here, there was significantly more involvement by Attorney Crockett as an attorney with the report's creation. ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Moreover, here, with few exceptions, Attorney Crockett was copied on the communications between Defendant Bronfman and Dr. Dietz. Lastly, the Government concedes that Defendant Bronfman has turned over the

Dietz report to the trial team.  Based on the aforementioned distinctions between O'Hara and the instant case, the Court does not find the O'Hara holding applicable.

The Government further argues that the Dietz report, which was released to the media, discusses the doctor's retention, the scope of his assignment, and the people he interviewed, so any applicable privilege as to this information has been waived.  The Second Circuit, in In re von Bulow, 828 F.2d 94 (2d Cir. 1987), considered a similar argument and rejected it.  Although that case was a civil case and involved the question of whether attorney-client privilege, rather than work-product privilege, had been waived, the Court considered the key question that to establish either privilege, there must be an intent for the communications to be kept confidential.  The issue on appeal was whether the district court erred in holding that publication of a book that included excerpts of certain conversations between the defendant and his criminal defense attorney in connection with an underlying criminal matter, resulted in (1) a waiver of the entire contents of the conversations, and (2) subject matter waiver of conversations on the same subject.  In concluding that the District Court had erred in finding waiver, the Second Circuit explained the following with regard to (1):

> The [District Court] reasoned that where reputation is at stake in a major case, it is tried today before the bar of public opinion, as well as in a courtroom. Id. at 78-79. Judge Walker believed it unfair to permit a party to make use of privileged information as a sword with the public, and then as a shield in the courtroom. Id. at 79. Thus, the trial judge found what is generally called a "waiver by implication," see Wigmore, supra, § 2327, at 635, based on fairness considerations.
>
> These considerations—which underlie "the fairness doctrine"—aim to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information. Under the doctrine the client alone controls the privilege and may or may not choose to divulge his own secrets.
>
> But it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. Hunt v. Blackburn,

128 U.S. 464, 470-71, 9 S. Ct. 125 (1888).  From that has grown the rule that
testimony as to part of a privileged communication, in fairness, requires production
of the remainder. McCormick On Evidence § 93, at 194-95 (2d ed. 1972).

Yet this rule protecting the party, the factfinder, and the judicial process from
selectively disclosed and potentially misleading evidence does not come into play
when, as here, the privilege-holder or his attorney has made extrajudicial
disclosures, and those disclosures have not subsequently been placed at issue during
litigation. In fact, the cases finding, as the district court did here, implied waivers
on account of fairness involved material issues raised by a client's assertions during
the course of a judicial proceeding.

Id. at 101-02 (collecting cases).  The court concluded that "though the district court correctly found

a waiver by von Bulow as to the particular matters actually disclosed in the book, it was an abuse

of discretion to broaden that waiver to include those portions of the four identified conversations

which, because they were not published, remain secret."  Id. at 102 (emphasis added).

With regard to (2)—subject matter waiver—the Second Circuit applied the same analysis,

reasoning that:

[R]elated matters not so disclosed remain confidential. Although it is true that
disclosures in the public arena may be "one-sided" or "misleading", so long as such
disclosures are and remain extrajudicial, there is no legal prejudice that warrants a
broad court-imposed subject matter waiver.  The reason is that disclosures made in
public rather than in court—even if selective—create no risk of legal prejudice until
put at issue in the litigation by the privilege-holder.

Id. at 103.  The von Bulow facts are analogous to the present case so the case's reasoning is

persuasive.

The Court finds In re Grand Jury Subpoenas dated March 24, 2003, 265 F. Supp. 2d 321

(S.D.N.Y. 2003), to be similarly persuasive.  In that case, the Government moved for an order

compelling compliance with subpoenas served on a public relations firm which was hired by

attorneys for the target of a grand jury investigation.  Id. at 322-23.

Without suggesting any impropriety, the Court is well aware that the media,
prosecutors, and law enforcement personnel in cases like this often engage in
activities that color public opinion, certainly to the detriment of the subject's general

12

reputation but also, in the most extreme cases, to the detriment of his or her ability to obtain a fair trial. Moreover, it would be unreasonable to suppose that no prosecutor ever is influenced by an assessment of public opinion in deciding whether to bring criminal charges, as opposed to declining prosecution or leaving matters to civil enforcement proceedings, or in deciding what particular offenses to charge, decisions often of great consequence in this Sentencing Guidelines era. Thus, in some circumstances, the advocacy of a client's case in the public forum will be important to the client's ability to achieve a fair and just result in pending or threatened litigation.

Id. at 330. The court concluded that the attorney-client privilege had not been waived because "the purpose of the disclosure was to help the lawyers achieve a legal goal—avoidance of indictment." Pearlstein v. BlackBerry Ltd., No. 13 Civ. 7060 (CM) (KHP), 2019 WL 1259382, at *6 (S.D.N.Y. Mar. 19, 2019) (citing In re Grand Jury Subpoenas dated March 24, 2003, 265 F. Supp. 2d at 329-30). As the court's reasoning may suggest, the In re Grand Jury Subpoenas dated March 24, 2003 holding is generally limited to cases involving high profile grand jury investigations. See, e.g., Pearlstein, 2019 WL 1259382, at *6. This is exactly the type of case at issue here. In view of von Bulow and In re Grand Jury Subpoenas dated March 24, 2003, the Court concludes that disclosure of the Dietz report to the media does not vitiate the work-product privilege protecting the communications underlying the report.

### iii. Inclusion Of India Oxenberg Of Emails Did Not Waive Protections

The Government further argues that India's inclusion on six emails waives any privilege. Gov't Opp'n at 6 n.5. The Court has reviewed the referenced emails (Index Nos. 12-18) and finds that they are, in substance, the very same email. Each individual email sets forth the start of the same message but the message is cut off at varying points. The full email is at Index No. 15, which is the email with the latest time stamp (11/14/2017 at 11:00:31 PM). Clare Bronfman sent the email to Mr. Crockett, and India, and copied Dr. Dietz and his associate. ████

████████████████████████████

████████████████████████████████████████

████████████████████████████.  The work-product privilege is not waived

simply by disclosure to a third person.  Rule 16(b)(2)(A)(iii) excepts from discovery a "statement

made to the defendant, or the defendant's attorney or agent by a prospective government or

defense witness."[7]  At least one court has determined that emails sent to percipient third-party

witnesses that "reflect counsel's strategy for establishing an affirmative defense" constitute

attorney-work product.  See Ricoh Co. v. Aeroflex Inc., 219 F.R.D. 66, 70 (S.D.N.Y. 2003).

"[C]ourts generally find 'implied or subject-matter waiver only where the privileged

communications have affirmatively been put at issue or when the defendant seeks to exploit the

doctrine for a purpose inconsistent with the privilege, such as for the unilateral testimonial use of

privileged communications.'"[8]  Hatfield, 2009 WL 3806300, at *8 (quoting The Shinnecock

Indian Nation v. Kempthorne, 652 F. Supp. 2d 345, 365 (E.D.N.Y. 2009)).  The Court rejects the

Government's argument that India could have easily shared the communications with her mother

such that confidentiality was not protected.  Such speculation is unpersuasive.

### iv.  Additional Issues

The Government argues that even if the Court were to conclude that some privilege

attached to the documents, most of the documents involve issues related to Dr. Dietz's retention,

payment and scheduling meetings and communications about administrative matters are not

privileged.  Gov't Opp'n. at 10.  The two cases that the Government cites in support of its

---

[7] To the extent information was disclosed to the press, Defendant Bronfman does not claim privilege as to those particular communications, reports and statements.  Def. Mot. at 2 n.4.

[8] The Court notes that certain emails between Defendant Bronfman and Dr. Dietz copy Heidi Keyes, Dietz & Associate's Operations Manager.  See, e.g., Index Nos. 1-5.  Moreover, a member of Attorney Crockett's staff, Amy Noland, was copied on certain emails.  See, e.g., Index Nos. 147.

14

position are inapposite because they involve attorney-client privilege, which encompasses only those communications that are necessary to obtain legal advice.  Indeed, Rule 16 does not limit the "statements" or "documents" to any particular subject matter.  Rather, the relevant inquiry is who made the statement or document and when.  See Fed. R. Crim. P. 16(b)(2).

The Court notes Index No. 55 (Bates Nos. AAAB0014518), which is a draft report written by Dr. Dietz and addressed to Attorney Crockett.  Should Defendant Bronfman choose to use this report in her case in chief at trial, or to call Dr. Dietz at trial regarding the report, she will

be required to disclose it to the Government's trial team as "scientific and medical reports" are
excluded from the limitations of Rule 16(b)(2).

### C.  Category 2

Turning to category (2), Ms. Bronfman asserts that



are also protected by the attorney-client privilege.  Defendant
Bronfman does not assert privilege over those emails that pertain merely to scheduling.  Def's.
Opp'n at 4 n.5.

As the O'Hara Court noted,
Defendant Raniere was closely involved with Nxivm.  See O'Hara, 241 F.R.D. at 139.

The attorney-client privilege protects from disclosure "(1) a communication between
client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made
for the purpose of obtaining or providing legal advice."  In re County of Erie, 473 F.3d 413, 419
(2d Cir. 2007) (citing United States v. Construction Prod. Research, Inc., 73 F.3d 464, 473 (2d
Cir. 1996)).  The common-interest doctrine "serves to protect the confidentiality of
communications passing from one party to the attorney for another party where a joint defense
effort or strategy has been decided upon and undertaken by the parties and their respective
counsel."  United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (citing United States v.

---

9

<u>Bay State Ambulance & Hosp. Rental Serv.</u>, 874 F.2d 20, 28 (1st Cir. 1989)).  Notably, it is

"unnecessary that there be actual litigation in progress for the common interest rule of the

attorney-client privilege to apply."  <u>Id.</u> at 244 (citing <u>United States v. Zolin</u>, 809 F.2d 1411, 1417

(9th Cir. 1987), <u>vacated in part on other grounds</u>, 842 F.2d 1135 (9th Cir. 1988) (en banc), <u>aff'd</u>

<u>in part & vacated in part on other grounds</u>, 491 U.S. 554, 109 S. Ct. 2619 (1989)).

Here, the communications at issue between Defendant Bronfman and her counsel are

protected by attorney-client privilege.  The communications were made in anticipation of

litigation surrounding Nxivm and allegations about DOS, and no evidence has been offered that

Defendant Bronfman did not intend for the communications to be confidential.  ████████

████████████████████████████████████████████████████████████████

████████████████████  <u>See</u> <u>United States v. Ghavami</u>, 882 F. Supp. 2d 532, 536

(S.D.N.Y. 2012) (citing <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 390, 101 S. Ct. 677 (1981))

("The privilege protects not only the advice of the attorney to the client, but also the information

communicated by the client that provides a basis for giving advice.").  ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  ██  An attorney's initial

communications with a prospective client can be privileged.  <u>See</u> <u>Newmarkets Partners, LLC v.</u>

<u>Sal. Oppenheim Jr. & Cie. S.C.A.</u>, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) ("An attorney-client

───────────────────

10 ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████  Regardless, there
need not be a formal retainer agreement in order for an attorney-client relationship to exist.  <u>See</u>
<u>Newmarkets Partners</u>, 258 F.R.D. at 100.

relationship can arise prior to formal engagement.").  As such, the Court finds that the █████

████████████████████████████████████████████████

███████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████  See In re Subpoena Duces

Tecum Served on New York Marine & Gen. Ins. Co, No. M 8-85 (MHD), 1997 WL 599399, at

*4 (S.D.N.Y. Sept. 26, 1997) (citing In re Megan–Racine Assocs., Inc., 189 B.R. 562 (Bankr.

N.D.N.Y. 1995)).

**III.     Conclusion**

    For the reasons set forth above, the Dr. Park Dietz documents shall not be released any

further except as to the report which appears to have already been produced, ████████████████

████████, Defendant shall submit the requested information by April 8, 2019, after which the

Court will determine whether they should be released.

Dated:   April 4, 2019
        Brooklyn, New York

*Vera M. Scanlon*

               VERA M. SCANLON
           United States Magistrate Judge

---

11 ██████████████████████████████████████████████████

██████████████████████████████████████████ (Index No. 149,

Bates No. AAAB0002860).  See Gov't Opp'n at 6 n.5.