

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NS/KDE:TH
F. #2017R01840

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 21, 2021

By ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Allison Mack
                Criminal Docket No. 18-204 (S-2) (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter, pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines"), to apprise the Court of the substantial assistance provided by the defendant Allison Mack and permit the Court, in its discretion, to impose a sentence below the otherwise applicable advisory Guidelines range based upon the substantial assistance she provided to law enforcement. Mack is scheduled to be sentenced by the Court following her April 8, 2019 guilty plea to racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One) and racketeering, in violation of 18 U.S.C. § 1962(c) (Count Two). The applicable advisory Guidelines range is 168 to 210 months' imprisonment.

      I.    Background and Criminal Conduct

      The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR") prepared by the United States Probation Department on May 7, 2021, to which the government has no objection.

      As set forth in the PSR and as acknowledged at her guilty plea, Allison Mack was a first-line DOS "master" who recruited several women into DOS as her "slaves." As the Court is well aware, DOS was a secret organization led by Keith Raniere and comprised of "masters" who recruited and commanded groups of "slaves." PSR ¶¶ 60-72. Allison Mack recruited her own "slaves" by approaching young women and falsely describing DOS

as a secret women's empowerment group or sorority while intentionally concealing Raniere's role in the organization. Id. First-line DOS "masters," including Mack, required prospective "slaves" to provide "collateral"—including damaging confessions about themselves and loved ones (truthful or not), rights to financial assets, and sexually explicit photographs and videos—to prevent them from leaving the group or disclosing its existence to others. Id.

The first-line of DOS recruited women to make a "collateralized vow of obedience" to them, and by extension, to Raniere, and then directed their "slaves" to perform labor, take nude photographs, and in some cases, to engage in sex acts with Raniere. As directed by Raniere, Mack and other first-line DOS "masters" required their "slaves" to be branded with a symbol that, unknown to the "slaves," represented Raniere's own initials. DOS "slaves" were also controlled in a number of other ways, including physical isolation (by being required to stay in Clifton Park); forced participation in "readiness" drills; requirements to seek permission from Raniere or their "master"; sleep-deprivation and extremely restrictive diets. Id.

DOS "masters" also benefitted financially from recruiting and maintaining DOS "slaves." DOS "slaves" were coerced into providing labor and services for their "masters" under the threat of the release of their collateral, including editing and transcription work, taking naked photographs, and other tasks. DOS "masters" were expected to receive approximately 40 hours of labor each week from their "slaves." PSR ¶¶ 84-96; see Trial Transcript ("Tr.") at 1618-1619 (testimony of Lauren Salzman that Raniere decided that "if we each had six slaves who each had six slaves under them . . . you would have 40 hours, approximately 36, but approximately 40 hours of work per week for life from these individuals").

A. Nicole

Nicole, an actress in her early 30s, began taking Nxivm classes in 2015, including acting classes with Allison Mack. PSR ¶¶ 81-90. In February 2016, Mack invited Nicole to join a "women's mentorship group," but asked that Nicole first provide collateral. Id.; Tr. at 3845-47 (Nicole's testimony). At the time, Nicole was living in Brooklyn, New York. Nicole was told, and believed, that the organization was women-only and had no connection to Nxivm. After Mack made some suggestions of sufficient collateral, Nicole wrote a series of letters falsely alleging sexual abuse by a family member and other damaging allegations. Tr. at 3850. After Mack falsely assured Nicole that the letters would be "locked in a box" where nobody could see them, Nicole provided the letters and a sexually explicit video of herself to Mack. Tr. at 3853.

Once Nicole had provided this collateral, Mack told Nicole about DOS, referring to it as "the Vow." Tr. at 3854-55. Nicole agreed to become Mack's DOS "slave." Tr. at 3863-64. When Nicole agreed to join DOS, she was not aware and was not told that she would later be required to provide additional collateral. Tr. at 4017. Nicole was later

2

required to provide, and did provide, additional collateral on a monthly basis, including credit card authorizations and the right to her grandmother's wedding ring. Tr. at 4021-22.

Mack directed Nicole to be celibate for six months and subsequently assigned Nicole to contact Raniere. Tr. at 3868. One night when Nicole was staying with Mack in Clifton Park, New York, Raniere called Mack. Tr. at 3921-22. Mack told Nicole to go outside and meet Raniere, which directive Nicole obeyed. Id. Raniere blindfolded Nicole, led her into a car and drove her to a house. Tr. at 3925. Raniere then led Nicole, still blindfolded, through some trees and inside a building, where he ordered her to undress and tied her to a table. Tr. at 3926-29. Another person in the room, unknown to Nicole, began performing oral sex on Nicole. Raniere asked if Nicole was okay and told Nicole that she was "very brave" and not to tell anyone what had happened. Tr. at 3921. Unknown to Nicole, the individual who performed oral sex on Nicole was Camila, one of Raniere's first-line "slaves," and the sexual abuse took place at 120 Victory Way. Tr. at 1870.

Nicole met the other DOS "slaves" under Allison Mack, including India, Michelle, and Danielle. Tr. at 4011-12. Throughout Nicole's time in DOS, Mack regularly required her "slaves" to pose for nude photographs, including close-up photographs of their vaginas, either as assignments or collateral. Tr. at 4016, 4024. These photographs were sent to Raniere. Mack also assigned her other slaves—India, Michelle and Danielle—with the task of "seducing" Raniere, all of whom had sexual interactions with Raniere or attempted to do so.

B.  Jay

Jay is an actress and model who began taking Nxivm classes in or about 2016, during which time she became friendly with India, one of Mack's slaves. PSR ¶¶ 91-95; Tr. at 4318 (Jay's testimony). In approximately November 2016, India recruited Jay into DOS. Tr. at 4324. Jay was told that DOS was a women's-only organization. Id.

After several months, Mack and India gave Jay a "special assignment" to "seduce" Raniere and have Raniere take a photograph of Jay to prove that she had done it. Tr. at 4416-17. Mack told Jay, "I give you permission to enjoy it," and Jay understood the assignment as a direction to have sex with Raniere. Tr. at 4418-20. Jay asked Mack directly if Raniere was part of DOS, which Mack denied. Id. Jay refused to engage in a sex act with Raniere. Tr. at 4419. Before leaving DOS in approximately May 2017, Jay obtained images of collateral belonging to other DOS "slaves," believing that she could protect the release of her own collateral by having other DOS members' collateral as leverage. Tr. at 4423-25.

II.  The Guidelines Calculation

The government respectfully submits that the Guidelines calculation set forth in the PSR, reflecting a total offense level of 35 and an advisory Guidelines range of 168 to 210 months' imprisonment, is accurate and should be adopted by the Court.

3

III. <u>Applicable Law</u>

Section 5K1.1 of the Sentencing Guidelines provides that:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1. In addition, it is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." <u>United States v. Alexander</u>, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

IV. <u>Allison Mack's Cooperation with the Government</u>

The government recognizes the seriousness of the offense conduct in this case which, as reflected in the victim statements provided to the Court and defense counsel under separate cover, caused extraordinary harm and pain to the victims in this case. The government also acknowledges the defendant's particular history and background, as set forth in paragraphs 207-208 and 216 of the PSR.

As set forth below, the defendant provided substantial assistance to the government in the prosecution of certain of her co-defendants.

4

Mack was arrested on April 20, 2018, pursuant to an arrest warrant issued in conjunction with the unsealing of the initial indictment in this case. Mack was released on bond at her arraignment. Shortly after her arraignment, and periodically until her guilty plea, Mack requested and received the discovery material to which she was entitled.

On April 2, 2019, approximately a month before trial was scheduled to commence, Mack began to proffer with the government. During these proffers, Mack admitted to the criminal conduct described above, as well as related criminal conduct of which she was aware. Mack also provided details regarding crimes committed by other first-line DOS "masters," including assignments to "seduce" Raniere and efforts to find Raniere a virgin "successor." Mack detailed Raniere's role in devising assignments for Mack's "slaves," including, among other things, Raniere's repeated requests for nude photographs from Mack's DOS "slaves"; Raniere's instructions regarding the "seduction" assignment; and Raniere's encouragement of the use of demeaning and derogatory language, including racial slurs, to humiliate DOS "slaves." Mack also provided information regarding Bronfman's attempts to harass and threaten DOS victims, as well as Bronfman's efforts to initiate a criminal cybercrime investigation against an individual Bronfman believed to be critical of Raniere and Nxivm. Mack also provided relevant emails, documents and recordings to the government.

Perhaps most significantly, Mack provided the government with a recording that, at trial, served as crucial evidence of Raniere's role in devising the branding ceremony in which DOS "slaves" were branded with a symbol that, unknown to them, represented Raniere's own initials:

> Raniere: Do you think the person who's being branded should be completely nude and sort of held to the table like a, sort of almost like a sacrifice? I don't know if that, that's a feeling of submission, you know. So, [unintelligible]
>
> Mack: Yea
>
> Raniere: Ah, you could also of course videoing it, and videoing it ah from different angles or whatever gives collateral.
>
> Mack: Mmhm
>
> Raniere: So, it probably should be a more vulnerable position type of a thing.
>
> Mack: OK
>
> Raniere: Laying on the back, legs slightly, or legs spread straight like, like feet, feet being held to the side of the table,

5

|  | hands probably above the head being held, almost like being tied down, like sacrificial, whatever. |
|---|---|
| Mack: | OK |
| Raniere: | And the person should ask to be branded. |
| Mack: | OK |
| Raniere: | Should say, please brand me it would be an honor, or something like that. An honor I want to wear for the rest of my life, I don't know. |
| Mack: | OK |
| Raniere: | And they should probably say that before they're held down, so it doesn't seem like they are being coerced. |
| Mack: | OK |

GX 497-T; see GX 250 (Stipulation). The government was not previously in possession of this recording.

Following lengthy proffers on April 2, 3, 4 and 7, 2019, Mack accepted responsibility for her criminal conduct by pleading guilty to racketeering and racketeering conspiracy. She specifically admitted her involvement in her criminal conduct relating to Nicole and Jay.

The information and materials Mack provided substantially assisted the government in its prosecution of this case. As mentioned above, the recorded conversation between Mack and Raniere was introduced at Raniere's trial and provided critical evidence of Raniere's role in DOS and his requirement that DOS "slaves" be branded with his initials, facts which Raniere repeatedly denied after the existence of DOS became public. The portion of the recording in which Raniere states that DOS victims should say "please brand me it would be an honor" before they were held down, so "it doesn't seem like they are being coerced" was referenced in the government's opening and closing statements. Although Mack could have provided even more substantial assistance had she made the decision to cooperate earlier, Mack provided significant, detailed and highly corroborated information which assisted the government in its prosecution. While the government did not call Mack to testify at any trial or hearing, she met with the government numerous times at the government's request in order to prepare for potential trial testimony and was available to testify at Raniere's trial if requested to do so. In addition, while Mack's cooperation was

never publicly announced,[1] it is highly likely that the fact of her public guilty plea was a factor in other defendants' decisions to plead guilty. Mack could have given racketeering proof at a trial against any of her co-defendants who pleaded guilty after she did, including Clare Bronfman and Kathy Russell, who both pleaded guilty on April 19, 2019.

V.  Conclusion

For the reasons described above, the defendant Allison Mack has provided substantial assistance to the government in the investigation and prosecution of others. Therefore, the government respectfully requests the Court impose a sentence below the applicable Guidelines range.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By: /s/
Tanya Hajjar
Assistant U.S. Attorney
(718) 254-7000

cc: Counsel of Record (by ECF and email)
United States Probation Officer Jennifer G. Fisher (by email)

---

[1] Agent reports of Mack's proffers were disclosed as 3500 Material to trial defendant Raniere, so her cooperation was revealed to Raniere and his legal defense team, under protective order and, as set forth above, she was available to be called as a government witness at his trial.