UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES,

        -against-

ALLISON MACK,

                Defendant.

SENTENCING MEMORANDUM
18-CR-204 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

This sentencing statement concerns Defendant Allison Mack, who entered a plea of guilty on April 8, 2019 to two counts of an 11-count second Superseding Indictment. Ms. Mack pled guilty to Count One, which charged her with racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d) and 1963(a), and to Count Two, which charged her with racketeering in violation of 18 U.S.C. §§ 1962(c) and 1963(a). The statutory maximum sentence for these crimes is 20 years on each count. There is no statutory mandatory minimum.

Per the plea agreement, the defendant admits to the following racketeering activity: (1) the extortion of Jane Doe 5 and Jane Doe 8; (2) the forced labor of Jane Doe 5 and Jane Doe 8; and (3) wire fraud of "lower-ranking" members of the organization DOS. She also stipulates to the conduct underlying the sex trafficking of Jane Doe 5. (Presentence Investigation Report ("PSR") ¶¶ 1-2.)

### I. CALCULATION OF OFFENSE LEVEL & GUIDELINES RANGE

The Probation Department recommends that I calculate the Total Offense Level for Ms. Mack's sentence as 35. (Presentence Investigation Report ("PSR") ¶ 196.) The defendant is in Criminal History Category I. Based on a Total Offense Level of 35 and a

1

Criminal History Category I designation, the Probation Department recommends that I calculate the applicable Guidelines range as 168 to 210 months (or 14 to 17 ½ years). The defense agrees with this calculation.

The court finds that the Total Offense Level is properly calculated as 35, and that Ms. Mack belongs in Criminal History Category I. Accordingly, the court also calculates the applicable Guidelines range as 168 to 210 months in the custody of the Attorney General.

## II. SENTENCE

Having calculated the Guidelines range, I now turn to the factors outlined in 18 U.S.C. § 3553(a). Under § 3553(a), I must consider several factors in imposing a sentence, including the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need for the sentence to afford adequate deterrence; and the need to protect the public. The sentence must be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

As determined by the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, the Sentencing Guidelines are merely advisory, not mandatory. Accordingly, while I must consider the applicable Guidelines range, I am free to impose a sentence that falls outside of that range in either direction, even in the absence of "extraordinary" circumstances. *See Gall v. United States*, 552 U.S. 38, 47 (2007). The only limits on the sentence I will give today are that it be no greater than the statutory maximum, 20 years on each count, and that it be reasonable in light of the factors identified in § 3553(a).

Before turning to an analysis of the § 3553(a) factors, it is important to say a word about what I will be considering in that

analysis. First, I have reviewed the parties' sentencing submissions and listened to their arguments today in court. And I want to commend counsel on both sides for their excellent work in preparing for this sentencing.

I have read the 14 letters submitted in support of Ms. Mack, as well as two letters written by Ms. Mack herself. And I have listened carefully to Ms. Mack's statement during today's proceeding. I have reviewed and considered the six victim impact statements that were submitted in writing, and the two victim impact statements that were made on the record today.

I have also read nine letters of apology that Ms. Mack wrote to the victims of her conduct: because the terms of Ms. Mack's release precluded her from communicating with the addressees of these letters, she asked the court to modify the conditions of release to permit her to send these letters. The court reviewed the letters *in camera* and, after determining that they were reasonable and appropriate, granted the requested temporary modification of Ms. Mack's conditions of release to permit her counsel to send them, so long as the addressees consented to receive them.

I have also considered testimony adduced at co-defendant Keith Raniere's trial, to the extent it is relevant and has been proven, in my view, by a preponderance of the evidence. It is well-settled that the scope of a sentencing judge's inquiry when analyzing the § 3553(a) factors is "largely unlimited as to the kind of information [the district court] may consider, and it is free to consider evidence of uncharged crimes, dropped counts of an indictment, and criminal activity resulting in an acquittal in determining sentence." *United States v. Bennet*, 839 F.3d 153, 161 n.5 (2d Cir. 2016). I am not bound by the rules of evidence that would pertain at a trial, and I am not limited to considering admissible evidence in determining an appropriate sentence. *See United States v. Chang*, 59 F. App'x 361, 363 (2d Cir. 2003). Particularly

relevant here, the Second Circuit has repeatedly held that a sentencing court is entitled to rely on information "gleaned from a trial in which the person to be sentenced was neither a defendant nor represented by counsel." *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015); *see also United States v. Tracy*, 12 F.3d 1186, 1203 (2d Cir. 1993).

Ms. Mack, you pleaded guilty to one count of racketeering and one count of racketeering conspiracy, predicated on conduct that included forced labor, extortion, sex trafficking, and wire fraud. You admitted to conduct, in connection with your role as a "first-line master" in the secret organization DOS, that included recruiting women to join the organization and requiring them to serve as your "slaves."

By many accounts, you were able to use your status as a well-known public figure to gain credibility and influence with Nxivm and DOS recruits. You abused this position of power to persuade and pressure women to join DOS. You capitalized on your celebrity and these individuals' eagerness to be close to you, told them you were recruiting them for a "women's empowerment" sorority, and misrepresented and obscured fundamental facts about the organization and the conditions of membership. You told them that Keith Raniere was not involved. You did not tell them that they would be required to engage in sexual conduct.

You required your "slaves" to provide "collateral," both as a price of admission and on a continuing basis, in order to ensure their obedience and secrecy. The collateral that you extracted from your "slaves" included explicit photographs and videos, confessions and accusations that would damage them or their loved ones if released, and rights to significant financial assets. For example, one victim provided a sexually explicit video, credit card authorizations, a series of letters falsely alleging sexual abuse by a close family member, and the right to a family heirloom. She

testified explicitly that she believed her collateral would be forfeited and made public if she reneged on her commitment to DOS. In other words, you demanded that these women give you the keys to the most intimate, personal, and valuable parts of themselves, so that you could maintain power over them and have leverage to direct them to do anything you wanted.

And what did you direct them to do, using your leverage? You directed them to subject themselves to extreme sleep and food deprivation and geographical isolation, and to perform uncompensated labor whenever asked, often for your own benefit or gain. You directed them to submit nude photographs of themselves, and to be branded on their pubic areas with a symbol that, unbeknownst to them, included Mr. Raniere's initials. And in several cases, you directed your slaves to engage in sexual contact with Mr. Raniere. You used your leverage, your power over these women, to recruit and groom them as sexual partners for Mr. Raniere, and to pressure them into engaging in sexual acts that – according to their testimony – they did not want to engage in and would not have engaged in voluntarily.

This court, in sentencing Mr. Raniere, made it very clear how seriously it views the conduct for which he was convicted. When it comes to DOS, and the monstrous crimes he committed in connection with that organization, you were an essential accomplice. You willingly enslaved, destabilized, and manipulated other women so that when they were at their most vulnerable, when they believed that they owed you total obedience and that anything less than that would cause them serious personal and financial harm, when you had taken from them their sense of agency to make their own choices, you gave them "special assignments" to satisfy Mr. Raniere's sexual interests. Mr. Raniere could not have done that without you. You did that together. The evidence presented at his trial demonstrated that you were not a

begrudging or passive enabler, but rather that you were a willing and proactive ally.

The victims of your conduct have described, through their testimony at Mr. Raniere's trial and through their letters and statements to the court, the serious psychological and physical injuries that they suffered at your hands. They have described your cruelty, your lies and manipulation, your apparent sadistic pleasure in watching them suffer, and your creative enthusiasm when it came to developing new ways to debase them. They have described enduring psychological trauma as a result of your actions. The court acknowledges that to some of them, no sentence short of severe punishment will seem sufficient, and that no sentence of any length can truly redress their trauma.

The seriousness of your conduct and the harm that you wrought dovetails with the need for your sentence serve as a forceful deterrent – both for you, over the next many decades of your life, and for others who might be tempted to use their privileges and authority to inflict harm and exert control over the vulnerable and impressionable. For all of these reasons, I think that a serious sentence is appropriate.

There are also important mitigating factors, three of which I want to emphasize. First, your lawyers make a persuasive case that you, like the victims of your conduct, were ensnared in Mr. Raniere's coercive and manipulative web. Like your victims, you turned over collateral in connection with your involvement in DOS. Like your victims, you were subject to abusive and unreasonable demands that were designed to destabilize you and deprive you of your agency. I don't doubt that you were also manipulated and that you also felt captive, even as you were inflicting those very consequences on other women. In the language of DOS, you were a slave as well as a master, and the harms that you inflicted as a master were, to some extent, demanded of you in your capacity as Mr. Raniere's slave. Even the

letters from your victims reflect a kind of ambivalence: many of them see you both as their abuser and as a fellow victim. That is something that weighs on me. It is hard to determine an appropriate sentence for a perpetrator who is also her co-conspirator's victim.

Second, you have expressed remorse and contrition and made significant progress towards rehabilitating yourself. And I see no reason to doubt that your efforts and your progress are sincere. In contrast to other individuals who have remained deferential to Mr. Raniere even as the artifice of his virtues crumbled, you have begun the hard work of unraveling the lies and grappling with your culpability and the consequences of your behavior. I don't doubt that it has been difficult and painful to dispel some of the illusions under which you were operating and to attempt to see yourself and your behavior with a new kind of clarity. I commend you for having the courage to engage in that work. Your contrition and ownership of your actions cannot repair the damage that you inflicted, but it is an important and encouraging step towards your own rehabilitation. I urge you to continue that work, during and after your sentence, so that you may better understand for yourself what happened, why it happened, what effects it had, and how you can ensure that it does not happen again.

Third, you have assisted the Government with its investigation and prosecution. As the Government described in its sentencing submission, you began to cooperate with their investigation approximately one month prior to Mr. Raniere's trial. You provided key details about Mr. Raniere's role in DOS, including his solicitation of nude photographs and sexual encounters. You turned over evidence, including emails, documents, and an audio recording that became a crucial piece of evidence at trial, in which Mr. Raniere devises the DOS branding ritual. According to the Government, you were willing to testify at trial, though you were

not called upon to do so. The Government takes the position that while you could have been even more helpful if you had begun to cooperate sooner, you deserve a sentence below the Guidelines range in recognition of the assistance that you provided. (*See* Gov't Mem. at 6.)

### III. CONCLUSION

Taking all of this into consideration, my task today is to balance the need for a sentence that adequately punishes your serious conduct with the need for a sentence that supports rather than disrupts your efforts towards rehabilitation. There will be more chapters to your life after your sentence concludes, and it is the court's hope that you will be ready and able to make the most of those chapters, and that the family and community that have supported you through the last three years will aid you in continuing your work of rehabilitation as you move through your sentence, and as you eventually move beyond it.

I have considered the range of sentences that are available, and the range suggested by the Sentencing Guidelines. I have also considered the need to avoid unwarranted sentence disparities between you and other defendants who have been convicted of similar conduct. I have considered my obligation to impose a sentence that is sufficient but not greater than necessary to achieve the objectives of sentencing.

I agree with the Government, and with your lawyers, that a downward departure from the Guidelines range is warranted in this case. A sentence even in the lower end of that range would be much greater than necessary. At the same time, for the reasons I have explained, I believe that the nature and consequences of your offense and the need for deterrence warrant a serious sentence. While I accept your contrition as sincere and your efforts toward rehabilitation as genuine, it is impossible to ignore

the tremendous injuries that you caused. For that reason, I believe that a carceral sentence is appropriate.

Ms. Mack, I sentence you as follows: on Count One, a sentence of 36 months in the custody of the attorney general; on Count Two, a sentence of 36 months in the custody of the attorney general, to be served concurrently with the sentence on Count One.

I also sentence you to a three-year term of post-incarceration supervised release, to be served concurrently on both counts, to a fine in the amount of $20,000, payable immediately, and a $200 Special Assessment, also due immediately. While the court is not ordering restitution at this time, it reserves the right to make Ms. Mack jointly and severally responsible for any forthcoming restitution orders imposed upon her co-conspirators, as permitted under the relevant statutes.

The court has already approved an amended preliminary order of forfeiture on July 17, 2019. I direct that the forfeiture order be made final and attached to the judgment.

The following special conditions post-incarceration term of supervised release:

- The defendant shall not attempt to contact in person, or communicate with by letter, telephone, electronic means, or through a third party, any individual with an affiliation to Executive Success Programs, Nxivm, DOS or any other Nxivm-affiliated organizations, unless granted permission in advance by the Probation Office or by this court; nor shall the defendant frequent any establishment, or other locale where these groups may meet pursuant, but not limited to, a prohibition list provided by the U.S. Probation Department, unless granted permission in advance by the Probation Office or by this court.

- The defendant shall undergo a mental health evaluation, and if deemed necessary, participate in an outpatient

mental health treatment program as approved by the Probation Department. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree she is reasonably able, and shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the Probation Department to assess her ability to pay.

- The defendant shall complete 1,000 hours of community service.

You have the right to appeal your sentence to the United States Court of Appeals for the Second Circuit if you believe the Court has not properly sentenced you. Your time to appeal is extremely limited, so you should consult with your attorneys at once whether an appeal would be worthwhile.

Ms. Mack, I am not going to remand you into custody. You may return home, where you will be subject to the same conditions of release that have previously applied. You will be designated to a facility and given a surrender date. The court recommends that the defendant be designated to a Bureau of Prisons facility that provides mental health counseling so that she may continue the course of rehabilitative treatment that she has pursued while on release.

SO ORDERED.

Dated: Brooklyn, New York
June 30, 2021

      /s/ Nicholas G. Garaufis
      NICHOLAS G. GARAUFIS
      United States District Judge