1

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2
      - - - - - - - - - - - - - X
3
      UNITED STATES OF AMERICA,    :   18-CR-204(NGG)
4                                  :
                                   :   U.S. Courthouse
5                                  :   Brooklyn, New York
          -against-               :
6                                  :   TRANSCRIPT OF
                                   :   SENTENCING
7                                  :
                                   :
8      ALLISON MACK,               :   June 30, 2021
                                   :   11:00 a.m.
9           Defendant.             :
                                   :
10     - - - - - - - - - - - - - X

11    BEFORE:
                   HONORABLE NICHOLAS G. GARAUFIS, U.S.D.J.
12
      APPEARANCES:
13
      For the Government:      JACQUELYN M. KASULIS, ESQ.
14                             Acting United States Attorney
                               271 Cadman Plaza East
15                             Brooklyn, New York 11201
                               BY:  TANYA HAJJAR, ESQ.
16                                  Assistant U.S. Attorney

17
      For the Defendant:       KOBRE & KIM LLP
18                             800 Third Avenue
                               New York, New York 10022
19                             BY: SEAN S. BUCKLEY, ESQ.
                                   WILLIAM F. McGOVERN, ESQ.
20                                 MATTHEW I. MENCHEL, ESQ.

21

22    Court Reporter:      Holly Driscoll, CSR, FCRR
                           Chief Court Reporter
23                         225 Cadman Plaza East
                           Brooklyn, New York 11201
24                         (718) 613-2274

25    Proceedings recorded by mechanical stenography, transcript
      produced by Computer-Assisted Transcript.
```

2

1          THE COURTROOM DEPUTY:  United States versus Mack,

2     criminal cause for sentencing.

3          Beginning with the government, please state your

4     appearances for the record.

5          MS. HAJJAR:  Good morning, Your Honor, Tanya Hajjar

6     for the government and with me at counsel's table are Special

7     Agents Michael Weniger and Michael Lever of the FBI, and we're

8     also joined by Jennifer Fisher of the United States Probation

9     Department.

10          THE PROBATION OFFICER:  Good morning, Your Honor.

11          THE COURT:  Good morning.

12          MR. BUCKLEY:  Good morning, Your Honor, Sean

13     Buckley, William McGovern and Matthew Menchel on behalf of

14     Ms. Mack who is seated to my right.

15          THE COURT:  Good morning.

16          MR. McGOVERN:  Good morning, Your Honor.

17          THE COURT:  Good morning.

18          Before we get started let me just remind everyone to

19     please continue wearing your masks unless you're speaking in

20     the well and also please do not, if you still have an

21     electronic device, which you shouldn't, please do not use it.

22     We've instructed the court security officers that anyone who

23     uses such a device during this proceeding will be asked to

24     leave.

25          So, this is a sentencing for defendant Allison Mack

3

1   who has entered a plea of guilty on April 8th, 2019 to two

2   counts of an 11-count second superseding indictment.  Ms. Mack

3   has pleaded guilty to Count One, which charged her with

4   racketeering conspiracy in violation of 18, United States

5   Code, Sections 1962(d) and 1963(a), and to Count Two, which

6   charged her with racketeering in violation of 18, United

7   States Code, Sections 1962(c) and 1963(a).  The statutory

8   maximum sentence for these crimes is 20 years on each count.

9   There's no statutory mandatory minimum.  The sentence on each

10  count may run consecutively.

11          Per the plea agreement, the defendant admits to the

12  following racketeering activity:  (1) the extortion of Jane

13  Doe 5 and Jane Doe 8; second, the forced labor of Jane Doe 5

14  and Jane Doe 8; and third, wire fraud of "lower-ranking"

15  members of the organization called DOS, D-O-S.  She also

16  stipulates to the conduct underlying the sex trafficking of

17  Jane Doe 5.

18          We'll proceed as follows:  First, I will identify

19  the materials that the Court has reviewed in connection with

20  this sentencing and I'll ask the attorneys if I've missed

21  anything, to so advise me.

22          I'd like to thank Ms. Fisher of the Probation

23  Department for the excellent work that the Probation

24  Department has done in preparing the presentence investigation

25  report and supporting the efforts of the Court in connection

4

1   with this litigation.

2           The Court has reviewed the Presentence Investigation

3   Report of May 7th, 2021, and the defendant's response to the

4   PSR in a letter of June 7th, 2021.  The Court has also

5   reviewed the addendum to the PSR of June 22nd, 2021.

6           Has the defense received all of the materials from

7   the Probation Department and reviewed them with the defendant?

8           MR. BUCKLEY:  Yes, we have, Your Honor.

9           THE COURT:  All right.  And the government has

10  received everything as well, correct?

11          MS. HAJJAR:  Yes, Your Honor.

12          THE COURT:  Okay.  The Court has reviewed the

13  government's sentencing letter authorizing a below guideline

14  sentence pursuant to United States Sentencing Commission

15  Section 5K1.1, that's on June 21, 2021.

16          Has the defense seen that and shared it with

17  Ms. Mack?

18          MR. BUCKLEY:  Yes, Your Honor, we have.

19          THE COURT:  All right, thank you.

20          I also have reviewed the defendant's sentencing

21  memorandum of June 25th, 2021, and letters of support of the

22  defendant.

23          Has the government received all those materials?

24          MS. HAJJAR:  Yes, Your Honor.

25          THE COURT:  Okay.  Finally, the Court has reviewed

5

1    the victim impact statements.  Have those been shared with the

2    defense?

3              MS. HAJJAR:  Yes, they have, Your Honor.

4              THE COURT:  All right.  And have those been shared

5    with the defendant?

6              MR. BUCKLEY:  Yes, they have, Your Honor.

7              THE COURT:  Okay, thank you.

8              Now, is there anything else that I have not

9    mentioned that you have requested me to look at?

10             MS. HAJJAR:  No, Your Honor.

11             MR. BUCKLEY:  Your Honor, the only thing from the

12   defense were the sealed submissions that we made with regard

13   to certain private apology letters.

14             THE COURT:  As to certain?

15             MR. BUCKLEY:  Certain private apology letters.

16             THE COURT:  Yes, I've seen those and I'm going to

17   mention them in my remarks.

18             MR. BUCKLEY:  Understood.  Thank you, Judge.

19             THE COURT:  Yes.  Let me just ask, there were nine I

20   think, how many of those were actually provided to the

21   victims?

22             MR. BUCKLEY:  So, we provided eight of them to the

23   victims and the ninth victim, we reached out to counsel and

24   AUSA Hajjar also reached out to counsel but we were unable to

25   get in contact with her attorney.

6

1          THE COURT:  All right.  That's fine.  Very good.

2    Thank you.

3          The next step in this process is to determine the

4    appropriate guideline for these crimes and let me just go over

5    the calculation of the guideline and seek your comments on the

6    guideline calculation.

7          The Probation Department recommends that I calculate

8    the Total Offense Level for Ms. Mack's sentence as a 35 and

9    indicates that because Ms. Mack has no prior criminal history,

10   that her Criminal History Category is Category I.  Based on a

11   Total Offense Level of 35 and a Criminal History Category I

12   designation, the Probation Department recommends that I

13   calculate the applicable Guidelines range as 168 to 210 months

14   in the custody of the Attorney General, or put in years, 14 to

15   17 and a half years.

16         Does the government agree with the calculation?

17         MS. HAJJAR:  Yes.

18         THE COURT:  And does the defense agree with the

19   calculation?

20         MR. BUCKLEY:  Yes, Your Honor.

21         THE COURT:  All right.  Thank you.

22         The Court finds that the Total Offense Level is

23   properly calculated as 35 and that Ms. Mack belongs in

24   Criminal History Category I.  Accordingly, the Court

25   calculates the applicable Guidelines range as 168 to

7

1  210 months in the custody of the Attorney General.

2          The next step is to hear the victim impact

3  statements that have been provided to the Court or will be

4  provided to the Court.  We have one video statement and we

5  have one in-person statement.

6          What we'll do is we'll start with the video

7  statement.

8          (Whereupon, the video was played.)

9          THE COURT:  All right, thank you.

10          The remaining victim impact statement is from Jane

11  Doe number 8 who is present and will speak in-person from the

12  podium.

13          JANE DOE NUMBER 8:  Thank you, Your Honor.

14          Your Honor, I've traveled across the country and

15  spent the last of my Unemployment just to be here to make sure

16  my voice was present, heard and accounted for, not just for me

17  but for all my sisters who are unable to be here today, for

18  all of Allison's victims who do not have a voice, to not only

19  warn you and the rest of the world but to also shine light on

20  the truth of who Allison Mack truly is.  Allison Mack is a

21  predator and an evil human being, a danger to society with no

22  care, remorse or empathy for her victims.

23          When I woke up one morning to an article about her

24  asking for no jail time because she turned her life around I

25  was horrified.  I wanted to scream to the top of my lungs.  I

1   was triggered back into a memory of a real life nightmare she

2   had already put me through.

3          Your Honor, my name is Jessica Joan.  Through this

4   case you've known me as Witness Jay.  You heard my story and

5   all the horrors I've had to endure growing up, from being

6   raped, molested, to being abandoned by my mother as a small

7   child, and with all of that combined, Allison Mack and Keith

8   Raniere are the most evil monsters I've ever met.

9          I met Allison on my first trip to Albany.  She was a

10  proctor leading my group during the ESP intensive.  From the

11  moment I met her she made me feel like she was a kind, loving

12  and deeply empathetic person.  The way she would look into my

13  eyes would make me feel sane, like she really cared.  She felt

14  like the big sister I wish I had.  Even at the very beginning

15  of joining the vow she would tell me how she'd always be there

16  to look after and protect me.  Allison knew all the right

17  things to say in order to lure me in.

18         Once I joined the vow and learned that she was my

19  grand master, she admitted that she was intentionally leading

20  my group in order to find out who I was.  So, from the very

21  beginning she was probing into my psyche learning what made me

22  tick, what drove me and also my deepest vulnerabilities.

23         Allison is very clear and calculated in the moves

24  she makes, just like when she would randomly ask me how I felt

25  about Keith, what did I think about him, or when she told me

1    that seduction and sexual power isn't bad if it is used for

2    good.  The whole time she had been playing me and, worst of

3    all, grooming me into becoming a sex slave for her beloved

4    Keith Raniere.

5            Allison maliciously gave me, a survivor of rape and

6    sexual assault, a special assignment, an honor and privilege

7    to seduce Keith and have him take a naked picture of me to

8    prove I did it.  And when I pushed back confused, I asked if

9    Keith knew about the vow.  She blatantly lied and said that

10   doing this assignment would get rid of all my issues around

11   being sexually abused.  This demon of a woman literally tried

12   to use my pain, suffering and traumas against me to be abused

13   by another monster.  She intended and tried to hurt the little

14   girl inside of me yet again, the little girl that she watched

15   cry her eyes out night after night reliving these traumas.

16   Let me be very clear, she ended the phone call with a

17   sinister:  "And I give you permission to enjoy it."

18           So, when she was on house arrest hanging with her

19   family, taking Berkeley Women's Studies courses online and

20   enjoying the Orange County sunshine and sipping lattes and

21   putting on lip gloss with her friends, her victims were left

22   hiding in the dark corners of their homes reliving the fear,

23   silence and horror that Allison put us through.  She worked

24   her way into my heart.  She made me to believe that she would

25   do anything for me but the truth is she sought me out like a

1  predator stalking their prey, another little lamb for her to

2  slaughter.  She saw the little Jess inside of me and exploited

3  her.  She stabbed her and watched her bleed out.

4         I could blame myself for falling for it but the

5  truth is I was so desperately needing to feel loved, I felt so

6  alone, everyone in my life had left me in the dust and I just

7  wanted to feel like I mattered, that someone cared about me.

8  Allison will never know and feel the ramifications of her

9  actions.  She's grown up in a pretty and privileged life,

10 always protected, never knowing the consequences of her

11 actions.  She plays the victim so well.  She can blame Keith

12 all she wants but she is a monster cut from the same cloth.

13 The fact of the matter is she gained much pleasure out of

14 other people's pain, myself included.  I saw the evil glimmer

15 in her eyes and the sick sadistic smile on her face whenever

16 she would punish us.  She took great pride and joy knowing she

17 had total control, having blackmail to make us do whatever she

18 wanted.  She used fear to intimidate and coerce her supposed

19 sisters to do things against our will.

20        I truly believe there aren't enough years in the

21 rest of her lifetime to even begin to undo the harm, pain and

22 suffering she has caused myself and the rest of her victims.

23 If I would have gone through with her attempt to sex traffic

24 me, I know I wouldn't be able to stand here in front of you

25 today.  And to think I'm one of the lucky ones, I don't have

1  to walk around with a permanent brand on my pelvic region,

2  none of the beautiful symbols representing the elements that

3  she claimed but of her and Keith's initials; woman mutilated

4  and branded like cattle for her to forever have power and

5  dominion over them with that symbol burned onto their bodies.

6          Again, I stand here not only for myself but for all

7  the other countless victims unable to be present today and the

8  friends, families and loved ones forever affected by Allison's

9  actions.  Her poison does not only affect the victims and

10 loved ones but it also bleeds into future generations.  I

11 repeat this from the depths of my heart, Allison Mack is an

12 evil sociopath, a menace to society and a danger to innocent

13 beings.  She may put on a good show but don't let her fool

14 you.  I know exactly who she is, she's the Ghislaine Maxwell

15 to Keith's Jeffrey Epstein, and I just pray that she gets what

16 she deserves.

17         Allison, I thought I was going to be angry standing

18 here looking you face-to-face and I'm just sad, I'm sad

19 because you had everything and it wasn't enough.  I had

20 nothing and you tried to break me and you tried to dim my

21 light.  You imprisoned us but by the grace of God we are free

22 and now it's your turn to be imprisoned and feel as alone and

23 broken as we once did.  Only then can you begin to reflect on

24 your actions and darkness and hopes that one day you see the

25 light, then maybe, just maybe you can be free too.

1          Your Honor, I have complete trust and faith in your

2     empathy, discernment and understanding.  I believe you will

3     bring justice to myself and all of the other victims of

4     Allison Mack.  Thank you for your time.

5          THE COURT:  Thank you.

6          There are no further witness statements?

7          MS. HAJJAR:  No, Your Honor.

8          THE COURT:  All right.  Thank you.

9          Having calculated the Guidelines range, I now

10    turn to the factors outlined in 18, United States Code,

11    Section 3553(a).  Under Section 3553(a), I must consider

12    several factors in imposing a sentence, including the nature

13    and circumstances of the offense, the defendant's history and

14    characteristics, the need for the sentence to reflect the

15    seriousness of the offense, to promote respect for the law,

16    and to provide for just punishment for the offense; the need

17    for the sentence to afford adequate deterrence; and the need

18    to protect the public.  The sentence must be sufficient, but

19    not greater than that necessary, to accomplish the purposes of

20    sentencing.

21          So, at this point I'm going to hear from the

22    government and then I'll hear from the defense counsel, and

23    then I'll afford the defendant an opportunity to speak.

24          Ms. Hajjar.

25          MS. HAJJAR:  Thank you, Your Honor.  I know the

1   Court is well aware of the seriousness of the offense conduct

2   in this case as well as the harm caused by the defendant to

3   the victims, including those present today and those who

4   submitted victim impact statements to the Court.  The

5   government's sentencing letter described Ms. Mack's

6   cooperation with the government and I want to emphasize the

7   significance of cooperation in a case like this.

8          As Your Honor knows, DOS was a criminal organization

9   that operated, by its very nature, in secrecy.  DOS members

10  were forbidden to discuss the operation of the group and

11  Raniere's role as the head of the organization was concealed

12  to all but the few that he directly recruited.  For this

13  reason, information about the meetings and conversations

14  between Raniere and the first line of DOS, including Ms. Mack,

15  were very significant to the government's investigation and

16  prosecution.

17         Ms. Mack accepted responsibility in this case by

18  pleading guilty and she chose to cooperate by contributing

19  her knowledge of the crimes that she engaged in and to assist

20  the government in holding Raniere and others accountable for

21  their crimes.  The government did not call upon Ms. Mack to

22  testify at trial, though she was prepared to do so if called,

23  but Ms. Mack did provide law enforcement with information,

24  material and recordings which proved to be crucial evidence at

25  trial, evidence which confirmed Raniere's role in DOS.

14

1          And just as the Court must take into account the

2     seriousness of the crimes and the need for deterrence in this

3     case, the government submits the Court should also take into

4     account Ms. Mack's cooperation and the value of that

5     cooperation in imposing a sentence and for these reasons, the

6     government requests that the Court impose a sentence below the

7     applicable Guidelines range.

8          Thank you, Your Honor.

9          THE COURT:  Thank you.

10         MR. BUCKLEY:  Thank you, Your Honor.  May it please

11    the Court, I have no doubt that Your Honor has read through

12    the sentencing submission that we and Ms. Mack put together

13    for the benefit of this Court and for purposes of this

14    proceeding.  So, I am going to try my best not to belabor any

15    of those points or repeat those points and instead I just want

16    to use this opportunity to highlight some of the more

17    significant aspects that we set forth in that submission which

18    was directed at giving both the history and characteristics of

19    Ms. Mack, as well as marching through each of the 3553(a)

20    factors that Your Honor has to consider in imposing sentence

21    here.

22         Now, to be clear, Ms. Mack fully accepts

23    responsibility here.  To be sure, nothing that she has said

24    changes anything about the abhorrent conduct that she engaged

25    in, about the harm that she caused the victims, the harm that

1    she caused innocent individuals who put their trust in her.

2    Nothing that she says excuses that and we're not asking the

3    Court to excuse that.

4             But as you've heard from some of the victims

5    here, as you've heard in some of the victim letters that

6    have been submitted to the Court, this is a unique situation

7    where Ms. Mack stands before this Court not only as a

8    participant in Keith Raniere's abhorrent behavior but also

9    in many respects as a victim of it.  And, again, we don't say

10   that to the Court to ask you to excuse her conduct but we do

11   think that that relationship, the abusive relationship that

12   she had with Raniere is something that the Court can and

13   should consider in imposing sentence.

14            As the Court is aware and indicated earlier,

15   Ms. Mack has apologized both publicly and privately to the

16   individuals that she believes have been harmed by her

17   behavior.  We have heard that some of those individuals are

18   not satisfied with the apologies that she has provided.  We

19   understand that completely.  Ms. Mack doesn't offer these

20   apologies expecting them to be a panacea that is going to make

21   everything go away and make everything better, rather she has

22   reached out to these people to express her remorse and her

23   regret for the harm that she has caused them, for the harm

24   that she caused them after they placed their trust in her in

25   an effort to try to give them a step towards their own

16

1    recovery.  She recognizes that the apology will not solve all.

2         We've also heard that a number of individuals have

3    stated publicly that Ms. Mack's public apology did not go far

4    enough.  As the Court is aware, Ms. Mack apologized privately

5    to a number of individuals and Ms. Mack stands ready, to the

6    extent other people believe that her apology was not specific

7    enough or did not go far enough, she is prepared to engage

8    with them and apologize directly to them.

9         Your Honor, I have been representing Ms. Mack since

10   shortly before her arrest in this case, that's been a number

11   of years.  I've gotten to know Ms. Mack and I represent to

12   Your Honor that I believe that the remorse and regret that she

13   has expressed in both the public apologies, the apology she is

14   about to give here in court, as well as the private apologies

15   are sincere and I believe that Ms. Mack sincerely wants to try

16   to right the wrongs in whatever way she can and continue along

17   a path to rehabilitation.

18        Now, I just want to talk briefly about her path to

19   rehabilitation, Your Honor.  As I said, you know Ms. Mack

20   while also a participant in the crimes, in the crimes to which

21   she pled guilty before Your Honor, the crimes that you've

22   heard described before you both at trial and here in this

23   courtroom today, she pled guilty to them to accept full

24   responsibility but the Court in imposing sentence and in

25   constructing the sentence that it intends to impose should

17

1   take into account the unique set of conditions that brought

2   her here, that brought her where she was when she was first

3   arrested in April 2018, and that brought her here to this

4   courtroom today.

5          The fact that she was a victim of Raniere's

6   psychological and physical abuse we do think is relevant but

7   we don't think that explains all and that's why so much of

8   what we have presented to Your Honor has been focused on

9   affirmative steps that Ms. Mack has taken.  It has focused on

10  the fact that since her arrest and since her decision to break

11  ranks from Raniere and his co-conspirators, since her decision

12  to cooperate with the AUSAs, Ms. Mack has actively tried to

13  repair the harm that she has done to herself and to others.

14         She has, in the first instance, tried to figure out

15  the flawed thinking that led her down the path to commit

16  herself to Raniere and to support Raniere in the commission of

17  crimes and to bring others under his sway.  She has done that

18  through an intensive course of psychological therapy which she

19  commenced from the moment she decided that it was time to

20  break ranks.  She continues that psychological therapy to this

21  day and that was one of the letters that we presented to Your

22  Honor outlining from the doctor's perspective where she was

23  when she first came in and where she is now and the strides

24  that she has made.

25         You've also heard, Your Honor, about her education,

1   how while out on house arrest, the Court and the AUSAs'
2   insistence that if she be released on bail, it would be home
3   incarceration but not just home incarceration in Brooklyn
4   where she was residing at the time but rather back at her
5   childhood home where she would reside with her parents under
6   their supervision.  You've heard how she has used that time
7   productively, how she has tried to take steps to turn her path
8   completely from the path that she had been on at the time of
9   her arrest, how she has tried to educate herself and learn
10  about psychology and other important academic pursuits that
11  will help ensure that she never does what she had done before.
12          That home incarceration had the additional benefit,
13  Your Honor, of reuniting her with her family and I just want
14  to pause for a second, with the Court's permission, and
15  identify for Your Honor that numerous of her family are here,
16  her mother, her brother, extended family, friends, loved ones.
17  These are individuals who have submitted many of the letters
18  that the Court has reviewed.  They've traveled here to New
19  York to express their support and I think that's telling
20  because back in April 2018 no one would have expected this.
21          Back in April 2018 Ms. Mack had shied away from her
22  family, she had all but renounced her family in order to
23  dedicate herself entirely to the pursuits of Raniere and NXIVM
24  and DOS.  But her family is here, they have supported her,
25  they have helped her heal, they have helped her rehabilitate

19

1  and they have helped her to become the woman that sits here

2  before you today which is a woman who has a firm and vast

3  support network, a woman who is not going to be subject to the

4  depredations of a manipulator like Raniere, a woman who has

5  people who will make sure that she continues on this path,

6  this path of education and reform.

7         So, Your Honor, with that I would just say that in

8  considering her punishment, we would ask that you take into

9  account Ms. Mack as a whole, Ms. Mack as she was at the time

10  that she committed these crimes but also the Ms. Mack that has

11  taken the past three years to try to demonstrate to the Court,

12  to the victims, to her family and her friends that she can and

13  will be a better person when this is all behind her.

14         So, we would ask that the Court allow Ms. Mack the

15  opportunity to continue along this path of rehabilitation.

16  We ask that you take into account that because of what she had

17  chosen to do when she made the decision to align with NXIVM

18  and Raniere and then DOS, she literally lost everything.  She

19  lost her friends, she lost her family, she lost her loved

20  ones, she lost her career.  We would ask you to take that into

21  account, and the fact that she continues on this path.  And

22  taking those factors into account, impose a non-incarceratory

23  sentence or permit her to continue under home confinement so

24  that she can continue her therapy and continue her studies and

25  continue to reunite and strengthen and restrengthen the bonds

1  that she had lost with her family.

2          Thank you, Your Honor.

3          THE COURT:  Thank you.  All right.

4          Ms. Mack, is there anything you would like to say

5  before I sentence you?

6          THE DEFENDANT:  Yes, Your Honor.  I stand before you

7  today filled with remorse and guilt.  To begin, I would like

8  to state unequivocally that my behavior while in DOS was

9  abusive, abhorrent and illegal.  I also want to be clear to

10  this Court and to the victims that I renounce Keith Raniere

11  and all his teachings.  I cannot imagine the pain that the

12  victims must have experienced because of my actions.  For

13  this, from the deepest part of my heart and soul, I am sorry.

14  I understand that what I chose cannot be undone but it is my

15  sincere hope that an apology coupled with my promise to live a

16  life dedicated to rehabilitation may offer some semblance of

17  peace for you as you move ahead.  I am thankful for your

18  bravery in stepping forward and speaking out.

19          One of the thoughts I find most terrifying is where

20  I would be now had we not been stopped.  Your courage and

21  tenacity to right these wrongs rescued me and stopped so many

22  other horrible things from happening.  Over the course of a

23  decade I bought into the belief that I could only become the

24  person I wanted to be through total devotion to Keith Raniere.

25  I justified his transgressions, fulfilled his every request

1   and made choices that I will forever regret.  I rejected

2   anyone who tried to show me the truth, investing myself more

3   and more deeply into his perverse schemes.

4          Coming out from under this delusion has been the

5   most difficult experience of my life.  To admit that I was

6   wrong meant that I had to acknowledge the pain I caused and

7   the depth of destruction that lay in my wake.  But now I know

8   without a doubt that I was wrong.  The shame of this

9   recognition has been crippling and the guilt is permanent.

10         I'm also sorry to the families and loved ones of the

11  victims affected by my choices.  During this process I have

12  relearned just how valuable family is.  I'm ashamed for the

13  way I behaved and how I treated those most precious to you.

14         Finally, I want to say I'm sorry to my family and

15  loved ones.  I know this has been an intensely painful road

16  and words cannot express how significant your presence has

17  been throughout all of this.  Your willingness to forgive me

18  for my destructive choices is truly miraculous and I would not

19  be alive today without your support.

20         Thank you to the AUSAs for your patience and

21  humanity that you showed as I came out from under my cloud of

22  delusion.  Sorry.  (Pause.)

23         On the day of my arraignment you insisted that my

24  conditions of release include moving back home to my childhood

25  place with my parents.  This felt like a nightmare at the time

22

1    but quickly became the greatest gift I could have received.

2    My family and close community surrounded me with support and

3    care as I fought my way back to myself and took ownership of

4    the truth.  I wish more than anything I could have seen my

5    mistakes sooner.  I know this would have spared Your Honor,

6    the court and so many people I love so much trouble and

7    turmoil.

8            And lastly, thank you to you, Judge Garaufis, for

9    supporting my process of rehabilitation because you allowed me

10   to go to school and to share in important events with my

11   family.  I've been able to create a path forward for myself

12   and develop the tools I need to continue to right the wrongs I

13   committed.  I am grateful for the patience and humanity you

14   have demonstrated towards me over these past three years.  I

15   have complete faith that your fair and compassionate

16   deliberation regarding my sentence will be a huge part of

17   righting this wrong and helping me progress beyond this

18   horrific chapter of my life with integrity.

19           Thank you.

20           THE COURT:  Thank you.

21           As determined by the Supreme Court in *United States*

22   *v. Booker* in 2005, and its progeny, the Sentencing Guidelines

23   are merely advisory and not mandatory.  Accordingly, while I

24   must consider the applicable Guidelines range, I am free to

25   impose a sentence that falls outside that range in either

23

1    direction, even in the absence of "extraordinary"

2    circumstances.  The only limits on the sentence I will give

3    today are that it be no greater than the statutory maximum of

4    20 years on each count and that it be reasonable in light of

5    the factors identified in the sentencing statute, 18 United

6    States Code, Section 3553(a).

7           Before turning to an analysis of the 3553(a)

8    factors, it is important to say a word about what I will be

9    considering in that analysis.  First, I have reviewed the

10   parties' sentencing submissions and listened to their

11   arguments today in court and I want to commend counsel on both

12   sides for their excellent work in preparing for this

13   sentencing.

14          I have read the 14 letters submitted in support of

15   Ms. Mack, as well as two letters written by Ms. Mack herself,

16   and I have listened carefully to Ms. Mack's statement during

17   today's proceeding.  I've reviewed and considered the six

18   victim impact statements that were submitted in writing and

19   the two victim impact statements that were made on the record

20   today.

21          I have also read nine letters of apology that

22   Ms. Mack wrote to the victims of her conduct: because the

23   terms of Ms. Mack's release precluded her from communicating

24   with the addressees of those letters, she asked the Court to

25   modify the conditions of her release to permit her to send the

24

1   letters.  The Court reviewed the letters in camera and, after

2   determining that they were reasonable and appropriate, granted

3   the requested temporary modification of Ms. Mack's conditions

4   of release to permit her counsel to send them so long as the

5   addressees consented to receive them.

6           I have also considered testimony adduced at

7   co-defendant Keith Raniere's trial, to the extent that it is

8   relevant and has been proven, in my view, by a preponderance

9   of the evidence.  It is well-settled that the scope of a

10  sentencing judge's inquiry when analyzing the 3553(a) factors

11  is largely "unlimited as to the kind of information the

12  district court may consider, and it is free to consider

13  evidence of uncharged crimes, dropped counts of an indictment,

14  and criminal activity resulting in an acquittal in determining

15  sentence." *United States v. Bennett*, Second Circuit, 2016.

16  I am not bound by the rules of evidence that would pertain at

17  a trial, and I am not limited to considering admissible

18  evidence in determining an appropriate sentence.  Particularly

19  relevant here, the Second Circuit has repeatedly held that a

20  sentencing court is entitled to rely on information "gleaned

21  from a trial in which the person to be sentenced was not a

22  defendant nor represented by counsel."  See the case of

23  *Cacace*, C-A-C-A-C-E, and *United States v. Tracy*.

24          Ms. Mack, you pleaded guilty to one count of

25  racketeering and one count of racketeering conspiracy

1  predicated on conduct that included forced labor, extortion,

2  sex trafficking, and wire fraud.  You admitted to conduct in

3  connection with your role as a "first-line master" in the

4  secret organization DOS, that included recruiting women to

5  join the organization and requiring them to serve as your

6  "slaves."

7              By many accounts, you were able to use your status

8  as a well-known public figure to gain credibility and

9  influence with NXIVM and DOS recruits.  You abused this

10 position of power to persuade and pressure women to join DOS.

11 You capitalized on your celebrity and these individuals'

12 eagerness to be close to you, told them you were recruiting

13 them for a "women's empowerment" sorority, and misrepresented

14 and obscured fundamental facts about the organization and the

15 conditions of membership.  You told them that Keith Raniere

16 was not involved.  You did not tell them that they would be

17 required to engage in sexual conduct.

18             You required your "slaves" to provide "collateral,"

19 both as a price of admission and on a continuing basis, in

20 order to ensure their obedience and secrecy.  The collateral

21 that you extracted from your "slaves" included explicit

22 photographs and videos, confessions and accusations that would

23 damage them or their loved ones if released, and rights to

24 significant financial assets.  For example, one victim

25 provided a sexually explicit video, credit card

26

1    authorizations, a series of letters falsely alleging sexual

2    abuse by a close family member, and the right to a family

3    heirloom.  She testified explicitly that she believed her

4    collateral would be forfeited and made public if she reneged

5    on her commitment to DOS.  In other words, you demanded that

6    these woman give you the keys to their most intimate, personal

7    and valuable parts of their themselves so that you could

8    maintain power over them and have leverage to direct them to

9    do anything you wanted.

10          And what did you direct them to do, using your

11   leverage?  You directed them to subject themselves to extreme

12   sleep and food deprivation and geographical isolation, and to

13   perform uncompensated labor whenever asked, often for your own

14   benefit or gain.  You directed them to submit nude photographs

15   of themselves, and to be branded on their pubic areas with a

16   symbol that, unbeknownst to them, included Mr. Raniere's

17   initials.  And in several cases you directed your slaves to

18   engage in sexual contact with Mr. Raniere.  You used your

19   leverage, your power over these women, to recruit and groom

20   them as sexual partners for Mr. Raniere, and to pressure them

21   into engaging in sexual acts that, according to their

22   testimony, they did not want to engage in and would not have

23   engaged in voluntarily.

24          This Court, in sentencing Mr. Raniere, made it very

25   clear how seriously it views the conduct for which he was

27

1   convicted.  When it comes to DOS, and the monstrous crimes he

2   committed in connection with that organization, you were an

3   essential accomplice.  You willingly enslaved, destabilized,

4   and manipulated other women so that when they were at their

5   most vulnerable, when they believed that they owed you total

6   obedience and that anything less than that would cause them

7   serious personal and financial harm, when you had taken them

8   from their sense of agency to make their own choices, you gave

9   them "special assignments" to satisfy Mr. Raniere's sexual

10  interests.  Mr. Raniere could not have done that without you.

11  You did that together.  The evidence presented at his trial

12  demonstrated that you were not a begrudging or passive

13  enabler, but rather that you were a willing and proactive

14  ally.

15          The victims of your conduct have described, through

16  their testimony at Mr. Raniere's trial and through their

17  letters and statements to the Court, the serious psychological

18  and physical injuries they have suffered at your hands.  They

19  have described your cruelty, your lies, and your manipulation,

20  your apparent sadistic pleasure in watching them suffer, and

21  your creative enthusiasm when it came to developing new ways

22  to debase them.  They have described enduring psychological

23  trauma as a result of your actions.  The Court acknowledges

24  that to some of them no sentence short of severe punishment

25  would seem sufficient, and that no sentence of any length can

1   truly redress their trauma.

2          The seriousness of your conduct and the harm that

3   you wrought dovetails with the need for your sentence to serve

4   as a forceful deterrent - both for you, over the next many

5   decades of your life, and for others who might be tempted to

6   use their privileges and authority to inflict harm and exert

7   control over the vulnerable and impressionable.  For all of

8   these reasons, I think that a serious sentence is appropriate.

9          (Continued on next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (Continuing)

2           THE COURT:  There are also important mitigating

3  factors, three of which I want to emphasize.

4           First, your lawyers make a persuasive case that you,

5  like the victims of your conduct, were ensnared in

6  Mr. Raniere's coercive and manipulative web.  Like your

7  victims, you turned over collateral in connection with your

8  involvement in DOS.  Like your victims, you were subject to

9  abusive and unreasonable demands that were designed to

10 destabilize you and deprive you of your agency.

11          I do not doubt that you were also manipulated and

12 that you also felt captive, even as you were inflicting those

13 very consequences on other women.  In the language of DOS, you

14 were a slave as well as a master and the harms that you

15 inflicted as a master, were to some extent demanded of you in

16 your capacity as Mr. Raniere's slave.

17          Even the letters from your victims reflect a kind of

18 ambivalence.  Many of them see you both as their abuser and as

19 their fellow victim.  That is something that weighs heavily on

20 me.  It is hard to determine an appropriate sentence for a

21 perpetrator who is also her coconspirator's victim.

22          Second, you have expressed remorse and contrition

23 and have made significant progress towards rehabilitating

24 yourself and I see no reason to doubt that your efforts and

25 your progress are sincere.  In contrast to other individuals

30

1   who have remained deferential to Mr. Raniere, even as the

2   artifice of his virtues crumbled, you have begun the hard work

3   of unravelling the lies and grappling with your culpability

4   and the consequences of your behavior.  I do not doubt that it

5   has been difficult and painful to dispel some of the illusions

6   under which you were operating and to attempt to see yourself

7   and your behavior with a new kind of clarity.

8            I commend you for having the courage to engage in

9   that work.  Your contrition and ownership of your actions

10  cannot repair the damage that you inflicted, but it is

11  important and -- an important and encouraging step towards

12  your own rehabilitation.  I urge you to continue that work

13  during and after your sentence so that you may better

14  understand for yourself what happened, why it happened, what

15  effects it had and how you can ensure that it does not happen

16  again.

17           Third, you have assisted the Government with its

18  investigation and prosecution.  As the Government described in

19  its sentencing submission, you began to cooperate with their

20  investigation approximately one month prior to Mr. Raniere's

21  trial.  You provided key details about Mr. Raniere's role in

22  DOS, including his solicitation of nude photographs and sexual

23  encounters.

24           You turned over evidence, including e-mails,

25  documents and an audio recording that became a crucial piece

31

1    of evidence at trial in which Mr. Raniere advises that DOS

2    branding ritual.  According to the Government, you were

3    willing to testify at trial, although you were not called upon

4    to do so.

5            The Government takes the position that while you

6    could have been more helpful if you had begun to cooperate

7    sooner, you deserve a sentence below the guidelines range in

8    recognition of the assistance that you provided.

9            Taking all of this into consideration, my task today

10   is to balance the need for a sentence that adequately punishes

11   your serious conduct with the need for a sentence that

12   supports, rather than disrupts your efforts towards

13   rehabilitation.

14           There will be more chapters in your life after your

15   sentence concludes and it is the Court's hope that you will be

16   ready and able to make the most of those chapters and that the

17   family and community that have supported you through the last

18   three years will aid you in continuing your work of

19   rehabilitation as you move through your sentence and as you

20   eventually move beyond it.

21           I am appreciative that your family members with whom

22   you have reunited over the last three years are here today and

23   I believe that they have demonstrated the kind of mercy and

24   support that you will need in the years ahead; not just today,

25   not just yesterday, but throughout your life despite some of

32

1   the wrongs that you have inflicted on some of them over your

2   period of involvement with NXIVM and DOS.

3          And so to your family I say two things:  I say thank

4   you for assisting the defendant thus far and I say your job is

5   not over and you have an obligation to continue to do so

6   demonstrated by your presence here today, coming across the

7   country to be here in support of Ms. Mack.

8          I have considered the range of sentences that are

9   available and the range suggested by the Sentencing

10  Guidelines.  I have also considered the need to avoid

11  unwarranted sentences, sentence disparities between you and

12  other defendants who have been convicted of similar conduct.

13  I have considered my obligation to impose a sentence that is

14  sufficient, but not greater than necessary to achieve the

15  objectives of sentencing.

16         I agree with the Government and your lawyers that a

17  downward departure from the guidelines range is warranted in

18  this case.  I grant the Government's motion under 5K1.1 of the

19  Sentencing Guidelines.

20         A sentence even in the lower end of that range would

21  be much greater than necessary.  At the same time, for the

22  reasons I have explained, I believe that the nature and

23  consequences of your offense and the need for deterrence

24  warrant a serious sentence.  While I accept your contrition as

25  sincere and your efforts towards rehabilitation is genuine, it

33

1   is impossible to ignore the tremendous injuries you have

2   caused.  For that reason, I believe that an incarceratory

3   sentence is appropriate.

4           Are you ready to be sentenced, Ms. Mack?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  All right.  Please rise.

7           Ms. Mack, I sentence you as follows.  On Count 1, I

8   sentence you to 36 months in the custody of the Attorney

9   General;

10          On Count 2, I sentence you to 36 months in the

11  custody of the Attorney General, those sentences to be served

12  concurrently with each other;

13          I also sentence you to a three-year term of

14  post-incarceration supervised release to be served

15  concurrently on both counts;

16          To a fine in the amount of $20,000 payable

17  immediately, and to a $200.00 special assessment also due

18  immediately.

19          While the Court is not ordering restitution at this

20  time, it reserves the right to make the defendant jointly and

21  severally responsible for any forthcoming restitution orders

22  imposed upon the coconspirators as permitted under the

23  relevant statutes.

24          The Court has already approved an amended

25  preliminary Order of Forfeiture on July 17, 2019, and I direct

34

1  that the forfeiture order be made final and attached to the

2  judgment.

3          In addition, there are special conditions of

4  supervised release.  They include the following:

5          The defendant shall not attempt to contact in person

6  or communicate with by letter, telephone, electronic means or

7  through third-party any individual with an affiliation to

8  Executive Success Programs, NXIVM, DOS, or any other

9  NXIVM-affiliated organizations unless granted permission in

10  advance by the Probation Office or by this Court, nor shall

11  defendant frequent any establishment or the locales where

12  these groups may meet, pursuant but not limited to a

13  permission list provided by the U.S. Probation Department

14  unless granted permission in advance by the Probation Office

15  or by this Court.

16          The defendant shall undergo a mental health

17  evaluation and if deemed necessary, participate in an

18  outpatient mental health treatment program as provided by the

19  Probation Department.

20          The defendant shall contribute to the cost of such

21  services rendered and any psychotropic medications prescribed

22  to the degree she is reasonably able and shall cooperate in

23  securing any applicable third-party payment.

24          The defendant shall disclose all financial

25  information and documents to the Probation Department to

1    assess her ability to pay.

2           The defendant shall complete 1000 hours of community

3    service.

4           You have the right to appeal your sentence to the

5    United States Court of Appeals for the Second Circuit if you

6    believe the Court has not properly followed the law in

7    sentencing you.  Your time to appeal is extremely limited and

8    you should consult with your attorneys at once as to whether

9    an appeal would be worthwhile.

10          Do you understand?

11          THE DEFENDANT:  Yes.

12          THE COURT:  You may be seated.

13          Is there any objection to allowing the defendant to

14   surrender?

15          MS. HAJJAR:  No, Your Honor.

16          THE COURT:  All right.

17          Ms. Mack, I am not going to remand you into custody

18   today.  You may return home where you will be subject to the

19   same conditions of release that have previously applied to

20   you.  You will be designated to a facility and given a

21   surrender date to that facility; however, I am going to set a

22   surrender date just in case the Bureau of Prisons does not

23   provide you with one in a timely fashion.

24          I set a surrender date of September 29, 2021, before

25   noon, to the U.S. Marshal service in this courthouse.

36

1        If for some reason the Bureau of Prisons has not

2    designated you by then, your counsel can request an extension

3    of that surrender date as surrendering to a facility is more

4    appropriate in your case.

5            There are open counts?

6            MS. HAJJAR:  Yes, Your Honor.

7            The Government moves to dismiss Counts 6, 7, 8, 9

8    and 10 of the second superseding indictment.

9            THE COURT:  The motion is granted.

10           Is there anything else from the defense?

11           MR. BUCKLEY:  Yes, Your Honor.

12           We would respectfully request that the Court

13   recommend to the Bureau of Prisons that she be designated to a

14   facility near her family in Long Beach, California.

15           THE COURT:  The Court cannot mandate, but it does

16   request that the Bureau of Prisons designate the defendant to

17   an appropriate facility in the area of Long Beach, California,

18   or as close to there, that area, as is appropriate and

19   available.

20           MR. BUCKLEY:  Thank you, Your Honor.

21           THE COURT:  Is there anything else from the defense

22   for today?

23           MR. BUCKLEY:  No, Your Honor.

24           THE COURT:  Is there anything else from the

25   Government?

19

Proceedings                                               37

1          MS. HAJJAR:  No, thank you, Your Honor.

2          THE COURT:  All right.

3          Good luck to you, Ms. Mack and to your family.  We

4     are adjourned.

5

6          (Matter concluded.)

7

8                          oooOooo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25